JOSIAH P. ISBELL *vs.* THE NEW YORK AND NEW HAVEN RAILROAD COMPANY.

Where cattle are at large without the fault of the owner, and go upon the track of a railroad, and are there killed through the negligence of the railroad company in the management of their train, the owner is not precluded from the right to recover damages by the fact that the cattle were *trespassers* on the railroad.

To produce that result the owner must have been guilty of actual negligence, and not of a mere technical wrong.

The negligence of a party, which precludes his right to recover for an injury suffered through the negligence of another, must be a proximate and not a remote cause of the injury.

ACTION on the case for the destruction of certain oxen of the plaintiff, through the negligence of the defendants in running over them with their locomotive and cars. The case was tried to the jury on the general issue with notice.

The oxen, at the time of the injury, were at large on the highway, and went upon the railroad track. The fee of the ground occupied by the railroad was owned by the defendants. A by-law of the town of Milford, where the injury occurred, forbade the running of cattle at large—a general

statute authorizing such by-law. The plaintiff claimed that they were at large wholly without his fault or knowledge, and were let out of the pasture where he had placed them shortly before by some trespasser. The defendants claimed that they escaped through the insufficiency of the plaintiff's fence. Evidence was adduced by both parties on this point. The plaintiff claimed to have proved that the defendants were guilty of negligence in the management of their train.

The defendants requested the court to charge the jury, that, under the by-law referred to, all cattle straying in the public highways without a keeper were unlawfully at large, and would be presumed to have escaped through the insufficiency of the owner's fence, which in law would be the same as if the owner had suffered them to go at large; that if the oxen were in fact on the highway without a keeper, and wandered thence upon the railroad, they were trespassers there, and as to them the defendants were under no obligation to exercise ordinary care to avoid running over them, and could be rendered liable only for a willful and intentional injury; and that if the plaintiff put the oxen into a lot which was not inclosed by a lawful fence, and by reason of such defective fence they escaped into the highway and thence upon the railroad, the plaintiff could not recover because of his own negligence in the keeping of the oxen.

The court charged the jury, that the plaintiff's right to recover being founded upon the defendants' negligence, it was his duty to prove such negligence, and that it produced the injury complained of without any fault on his part; that the plaintiff was bound to exercise ordinary and reasonable care in the keeping and restraint of his oxen, and the defendants the like care in the running and management of their trains;—that by "reasonable or ordinary care" was meant such a degree of care as might reasonably be expected from the party at the time and in the circumstances in which he was placed;—that the oxen, while upon the highway without a keeper, were there in violation of the by-law of the town, and liable to the penalty imposed by the by-law, and, wandering from the highway upon the railroad, were for the

purposes of the present case to be considered as wrongfully on the railroad and trespassers thereon ;—that if the plaintiff in the keeping and restraint of his oxen exercised reasonable and ordinary care, and if they escaped from the plaintiff's pasture and wandered upon the railroad, not for want of such care, but because of the throwing down of the fence by a stranger without the plaintiff's knowledge, then the fact that they were on the highway in violation of the by-law, and, wandering thence upon the railroad, were technically trespassers thereon, would not prevent the plaintiff's recovery in this suit, but that he was entitled to a verdict if the injury was occasioned by the defendants' want of ordinary and reasonable care in the management of their train ;—and that if the plaintiff, in the keeping and restraint of his oxen, did not exercise such care, and for want of it the oxen escaped and strayed upon the railroad, so that the plaintiff's own want of ordinary and reasonable care occasioned or essentially contributed to produce the injury, he was not entitled to a verdict.

The jury returned a verdict for the plaintiff, and the defendants moved for a new trial.

*Dutton* and *Munson,* in support of the motion.

The defendants were the owners in fee of the railroad track where the accident occurred ; they were in the lawful occupation of the same at the time ; the oxen were trespassing upon the track when killed ; and the injury complained of was not intentionally or willfully done. Upon these facts the defendants contend that this action can not be sustained, because :

1. The cattle were unlawfully at large. The by-law of the town of Milford subjected the parties to the common law rule. At common law, the owner of cattle is bound to keep them upon his own premises at his peril ; or, in other words, to prevent their entering upon the premises of another. *Rust* v. *Low,* 6 Mass., 90. *Bush* v. *Brainard,* 1 Cow., 78. *Avery* v. *Maxwell,* 4 N. Hamp., 36. *Mills* v. *Stark,* id., 514. *Clark* v. *Brown,* 18 Wend., 213. *Little* v. *Lathrop,* 5 Greenl.,

356. *Stafford* v. *Ingersoll*, 3 Hill, 38. *Brown* v. *Maxwell*, 6 id., 582. *Rathbun* v. *Payne*, 19 Wend., 399. *Jackson* v. *Hathaway*, 15 Johns., 447.

2. It is no excuse in law that the plaintiff constructed fences suitable in his judgment to restrain them. His claim is not strengthened against the defendants, nor is the trespass in the slightest degree mitigated, by the fact that they were at large in consequence of the perverse act of a stranger. The fact that they were trespassing at the time constitutes a decisive bar to a recovery for damages for any injury not gratuitous or willful, and the absence of negligence on his part will not excuse the trespass. This is a well established general principle of the common law. *Blythe* v. *Topham*, Cro. Jac., 158. *Deane* v. *Clayton*, 7 Taunt., 489. 1 Rolle Ab., 88. *Bush* v. *Brainard*, 1 Cow., 78. *Sarch* v. *Blackburn*, 4 C. & P., 297. *Howland* v. *Vincent*, 10 Met., 371. Bac. Ab. *Trespass G*. *Hartfield* v. *Roper*, 21 Wend., 615. This principle has been applied in several recent cases to injuries caused by the negligence of railroad companies where cattle killed were trespassing upon the railroad. *Tonawanda R. R. Co.* v. *Munger*, 5 Denio, 255. *Munger* v. *Tonawanda R. R. Co.*, 4 Comst., 349. *Clark* v. *Syracuse & Utica R. R. Co.*, 11 Barb., 112. *Tallmadge* v. *Rensalaer & Saratoga R. R. Co.*, 13 id., 493. *Brooks* v. *New York & Erie R. R. Co.*, id., 594. *Towner* v. *Providence & Worcester R. R. Co.*, 2 R. Isl., 404. *Woolson* v. *Northern R. R. Co.*, 19 N. Hamp., 267. *Vandegrift* v. *Rediker*, 2 Zabriskie, 185. *Town* v. *Cheshire R. R. Co.*, 1 Fost., 363. *Central Military Track R. R. Co.* v. *Rockfellow*, 17 Ill., 541. *Illinois Central R. R. Co.* v. *Reedy*, id., 580. *Railroad Company* v. *Skinner*, 19 Penn., 298. *Caroll* v. *New York & New Haven R. R. Co.*, 1 Duer, 571. *Hill* v. *Ontario, Simcoe & Huron R. R. Co.*, 13 Upper Canada Queen's Bench R., 503. *Manchester, &c., Railway Co.* v. *Wallis*, 25 Eng. L. & Eq., 373. The proposition which we lay down is not in conflict with any settled rule of law in this state. In the case of *Beers* v. *Housatonic R. R. Co.*, 19 Conn., 556, the cattle were being driven along the highway, and were crossing the railroad track under the

care of their keeper when they were killed; and in the case of *Housatonic R. R. Co.* v. *Waterbury*, 23 Conn., 101, the plaintiff had a right of way across the railroad from one part of his farm to the other, and the court say that the railroad company held subject to this easement in the plaintiff and remark the fact that the plaintiff's cattle were not therefore trespassers in crossing and recrossing the railroad.

3. The rule requiring *ordinary care*, as laid down by the court to the jury, does not apply to *trespassers*. There is no duty created between an owner of the soil and a trespasser, except that the owner of the soil may not willfully or designedly injure him. Negligence is a relative term, and, in order to make the defendants guilty of neglect to the plaintiff, there must have existed some *relation between the parties* by virtue of which the defendants owed him care and diligence, and where this relation has no existence between particular parties there can be no neglect, and no such thing as legal negligence or negligence in the sense in which the court put the case to the jury. Had both parties stood on an equality as to the enjoyment of a legal right, and both been engaged in a lawful employment, then the charge would have been correct. But the record shows the cattle were trespassers, and wrongfully on the railroad.

4. The trespass of the cattle was the trespass of the plaintiff, and there is no better settled rule of law in the books than that when " a plaintiff sues for negligence he must himself be without fault." *Brown* v. *Maxwell*, 6 Hill, 592. *Kennard* v. *Burton*, 25 Maine, 39. *Perkins* v. *E. B. & M. R. R. Co.*, 29 id., 307. *Smith* v. *Smith*, 2 Pick., 621. *Lane* v. *Crombie*, 12 id., 177. *Rathbun* v. *Payne*, 19 Wend., 399. *Hartfield* v. *Roper*, 21 id., 615. *Munger* v. *Tonawanda R. R. Co.*, 4 Comst., 359. The cattle having been on the railroad track as trespassers, the law imputes a fault to the plaintiff, and, this fault directly contributing to produce the injury, he can not recover. *Cranston* v. *Cin. H. & D. R. R. Co.*, 1 Hand., 193.

5. The defendants being the legal owners in fee of their railroad track by purchase and the rightful owners of it by

the terms of their charter, were entitled to the entire and exclusive possession and control of it. Remarks of Hinman, J., in *Housatonic R. R. Co.* v. *Waterbury*, 23 Conn., 110. *Railroad Co.* v. *Skinner*, 19 Penn., 302. *Munger* v. *Tonawanda R. R. Co.*, 4 Comst., 356.

6. The defendants were in the lawful exercise and enjoyment of their rights and would have done no injury to the plaintiff's cattle if they had not strayed upon the track. The defendants had a right to pursue their lawful business in their usual method—to run their trains at their usual speed—without being liable to any charge of negligence and unskillfulness by a trespasser. They were not bound to spend time, or withdraw their attention from the management of their train, in order to avoid trespassers, (especially where there was no public crossing and no reason to fear a collision,) except in so far as duty to passengers or property entrusted to their care might require. And they are to be allowed a full and free discretion in pursuing such course as will best fulfill these important duties. Any other rule would be ruinous to a railroad company.

7. Considerations of public policy most decidedly require the adoption of a rule calculated to keep all nuisances, such as roaming cattle, off railroad tracks. The rule should be stringent, forming, so far as practicable, a guaranty to passengers that their lives and safety shall not be imperiled by unlawful obstructions. In the language of Ch. J. Gibson, "every obstruction of a railway is unlawful, mischievous and abateable at the cost of the owner of it, without regard to his ignorance or intention. If the owner do not attend to it, the company's servants, having their own business to mind, are not bound to do so; and he who trusts his property to the chances of accident is bound to stand the hazard of the die." *Erie Railroad Co.* v. *Skinner*, 19 Penn., 302, 304.

8. The court should have charged the jury as requested by the defendants in regard to the presumption that the cattle were at large by the negligence of the plaintiff. The presumption was against the plaintiff. "Cattle are not to be presumed as lawfully going at large." *Perkins* v. *Eastern*

*& B. & M. R. R. Co.,* 29 Maine, 307. " And when at large they are presumed to have escaped through the insufficiency of their owners' fence, which in law is the same as if the owner suffered them to go at large without any restraint whatever." *Jackson* v. *Rutland & Burlington R. R. Co.,* 25 Verm., 161.

*Blackman* and *Harrison,* contra.

1. The action of trespass upon the case is an equitable action, devised for the purpose of redressing injuries upon broad principles of justice. In such an action the plaintiff seeks redress for an injury done to his property by the defendants. That injury was done by the defendants. It was needlessly done. It was unreasonably done. It was done by the unreasonable negligence of the defendants. That unreasonable negligence was the " proximate " and only cause of the injury. That unreasonable negligence was of a peculiar kind. It involved, 1st. The presence of the defendants, by their agents, at the time and place of the injury ; and 2nd. Mischievous violence consciously and carelessly exerted by the defendants and immediately directed by them to the production of the injury. The plaintiff had no agency in producing the injury. He had used all reasonable care to avoid it.

Upon the foregoing facts, explicitly found upon the record, the charge of the court was right, and conformable to the uniform language and spirit of our Connecticut decisions. *Beers* v. *Housatonic R. R. Co.,* 19 Conn., 566. *Birge* v. *Gardiner,* id., 507. *Park* v. *O'Brien,* 23 id., 339. *Neal* v. *Gillett,* id., 437. *Wilson* v. *Brett,* 11 Mees. & Wels., 113.

2. The doctrine that even a willful and negligent trespasser is entitled to no redress for an injury needlessly done to him while trespassing by the unreasonable negligence of the person trespassed upon, is equally unsound in morals and in law, and has been repeatedly repudiated by our courts. *Johnson* v. *Patterson,* 14 Conn., 1. *Beers* v. *Housatonic R. R. Co.,* supra. *Birge* v. *Gardiner,* supra. *Lynch* v. *Nurdin,* 1 A. & E., (N. S.,) 30. *Robinson* v. *Cone,* 22 Verm., 213, 221.

*Jackson* v. *Rutland & Burlington R. R. Co.*, 25 id., 162.
*New Haven Steamboat Co.* v. *Vanderbilt*, 16 Conn., 420.
*Daley* v. *Norwich & Worcester R. R. Co.*, 26 id., 591.
*Kerwhacker* v. *Cleveland, Columbus & Cincinnati R. R. Co.*,
3 Ohio, 172. Especially should it be repudiated in a case
like this, where the so called " trespass " of the plaintiff was
neither willful nor negligent and in no way contributed to
the injury ; and where the defendants, by charging upon the
plaintiff a trespass purely involuntary and technical, are
trying to shield themselves from liability for their confessed
misconduct. But the plaintiff was not, even technically, a
trespasser. He did not " suffer " his cattle to go at large.
Rev. Stat., tit. 15, § 12. *Studwell* v. *Ritch*, 14 Conn., 292.
*Selleck* v. *Selleck*, 19 id., 501.

3. The cases which are relied upon by the defendants, as
giving color to their principal claim, were essentially different
from the present case. Excepting the English game-law
cases, which our courts have repudiated, and perhaps a sin-
gle other case based upon the authority of those cases—none
of which cases, if deemed authoritative, would be fully ap-
plicable to this—the cases relied upon by the defendants
fall, without exception, into two classes. 1st. Cases in
which the plaintiff's trespass was of a peculiar kind, namely :
a trespass *involving negligence substantially contributing to
produce the injury.* 2d. Cases in which the defendants were
not guilty of any negligence or other misconduct contributing
to produce the injury.

4. In any view of the case we rely upon the decisions of
our own supreme court, as having fully established, in Con-
necticut, the rule claimed by us, as a rule of sound morality,
sound law, perfect simplicity, and universal application.
Authorities, supra.

5. The inquiry into the existence and extent of the negli-
gence claimed upon one side or the other was a mere ques-
tion of fact, to be determined in view of all the evidence
adduced upon the trial, and was properly left to the jury.
*New Haven Steamboat Co.* v. *Vanderbilt*, 16 Conn., 420.

*Beers* v. *Housatonic R. R. Co.*, 19 id., 566. *Park* v. *O'Brien*, 23 id., 339.

ELLSWORTH, J. In this case the plaintiff seeks to recover the value of three oxen, destroyed, as he says, on the defendants' railroad, by a locomotive carelessly and negligently conducted by the defendants' servants and agents. The jury by their verdict have found the facts alleged in the declaration to be proved, and, which is essential to the plaintiff's right of recovery, that there was no co-operating carelessness or negligence on his part. If this be all that there is in the case, there can be no question that the verdict should stand, and that no new trial should be granted.

But the defendants insist that this is not all,—that the court has mistaken the law, and left the jury to adopt false rules in arriving at their conclusion. They say that the oxen were *trespassing* on the railroad, and that therefore the defendants' agents were absolved, so far as these cattle were concerned, from the duty of exercising ordinary care and attention in the running of their train; and under this view they requested the court to charge the jury, in the first place, that the oxen, being at large without a keeper, were to be presumed to have escaped from the plaintiff's enclosure through his insufficient fence, which they claim is the same as if the oxen had been turned out upon the highway or left to wander without restraint, and so were unlawfully at large and were trespassers in going upon the railroad;—and in the second place, that the cattle being trespassers, the defendants' agents were under no obligation to exercise ordinary care to avoid injuring them;—and further, that if the cattle were wrongfully let out by a stranger, and were on the road even without the knowledge or actual fault of the plaintiff, there was, in the eye of the law, negligence and fault on his part which precludes his right to recover; upon the well settled doctrine that a man can not recover for damage caused by the negligence of another, unless he was free from negligence himself. The defendants had an undoubted right to ask for these specific instructions, if they contain the true rule of

law on the subject and will sustain their defense; but we think that the propositions which they contain are not the law, and that the court committed no error in refusing so to charge the jury, or in giving the instructions that were given.

Is there then any presumption of law, as claimed by the defendants, that cattle found at large have escaped through an insufficient fence of the owner? We think there is not. Besides, in this instance, the state of the plaintiff's fence, and the cause and circumstances of the escape of the cattle, were fully inquired into on the trial, and, upon the evidence, the jury have found the facts to be as claimed by the plaintiff—at least so far as this, that it was through no fault or neglect on his part that the cattle were on the railroad track. The defendants say that because the cattle were there, it puts the plaintiff of necessity in the wrong in the eye of the law, makes the cattle trespassers, unlawfully obstructing the road, and works a forfeiture of the right to demand the exercise of care on the part of the defendants in running their train of cars, even though from the want of such care the cattle should be run over and killed.

This presents a most grave question, both of law and of morality, but we think its solution attended with no serious difficulty. The defendants place their defense on the doctrine of the books, that where a plaintiff seeks to recover for the negligence of a defendant, it must appear that the negligence of the plaintiff did not essentially contribute to the injury; a doctrine which has long been recognized as a sound one here, and elsewhere; indeed the law was so laid down in the judge's charge in this instance. But to this general doctrine there are important qualifications, and this case is claimed by the plaintiff to present one of them; or rather, in this and kindred cases, it is said, and we think correctly, that there is an important distinction to be observed, and that great injustice would be done by the indiscriminate application of the rule of law to which we have referred.

Assuming it as true, then, that the cattle escaped and wandered upon the track through the misconduct of a stranger,

Isbell *v.* New York and New Haven R. R. Co.

without the knowledge of the owner and without fault or want of care on his part, wherein, we ask, is there wrong or neglect, more than if the cattle had been wrongfully let out of the owner's stable, and had wandered upon the road? It is true, perhaps, that being at large contrary to the by-law, they might be taken up and impounded, and an action of trespass might lie in favor of a party on whose land they should enter; but wherein is there wrong or neglect on the part of the owner of the cattle? A right to impound the cattle does not imply any such thing, nor does a liability to be sued for a technical trespass. How then does the doctrine alluded to apply to this case, so as to preclude the plaintiff from recovering in his action for the defendants' negligence? If the plaintiff is free from all actual fault of course the defendants must pay the damages which he has sustained by their negligence; for had they done their duty no injury would have ensued, and to hold, under these circumstances, that the plaintiff has forfeited his cattle and placed himself beyond the pale of the law, leaving the defendants free from all obligation to exercise care, shocks every moral feeling, and well nigh brings the whole doctrine itself, which the defendants are seeking to apply, into suspicion and doubt.

The great argument of the defendants is, that the railroad is their unqualified property, which they may occupy and use without restraint at their pleasure, and when wrongfully hindered therein, may remove the hindrance in the manner most convenient for themselves; that in this instance their train was moving with its accustomed speed only, and, if the plaintiff's cattle happened to be run down by it, it was their fault to be so exposed, and that they were themselves under no obligation to exercise care to prevent the injury. This line of argument is to a certain extent reasonable and correct, but along with it, underlying the defendants' conclusion, there is a radical and manifest error. Even if the premises assumed by the defendants are throughout correct, it by no means follows that an obstruction on the road, of the kind in question, may be ejected in any way most convenient to the

defendants' agents. It must, we think, be done with prudence
and reasonable care; the force may not be excessive, barba-
rous and unnecessarily destructive.   The plaintiff has not
forfeited his cattle because they have strayed away, but may
justly demand of the defendants to conduct as the circum-
stances at the moment require, doing no unnecessary injury
to his property, and carrying out the spirit of the golden rule,
which applied to a case like the present, is as good law as it
is sound morality.   The kindred maxim, *sic utere tuo ut
alienum non lædas*, is but another expression of that rule, and
in our view should govern the defendants' conduct in this in-
stance, even if there be a possible remote neglect on the part
of the plaintiff, or a technical liability for the trespass of the
cattle.   A remote fault in one party does not of course dis-
pense with care in the other.   It may even make it more
necessary and important, if thereby a calamitous injury can
be avoided, or an unavoidable calamity essentially mitigated.
Common justice and common humanity, to say nothing of
law, demand this ; and it is no answer for the neglect of it
to say that the complainant was first in the wrong, since in-
attention and accidents are to a greater or less extent inci-
dent to human affairs.   Preventive remedies must therefore
always be proportioned to the case in its peculiar circum-
stances —to the imminency of the danger, the evil to be
avoided, and the means at hand of avoiding it.   And herein
is no novel or strange doctrine of the law ; it is as old as the
moral law itself, and is laid down in the earliest books on
jurisprudence.   A boy enters a door yard to find his ball or
arrow, or to look at a flower in the garden; he is bitten and
lacerated by a vicious bull dog; still, he is a trespasser, and if he
had kept away would have received no hurt.   Nevertheless,
is not the owner of the dog liable ?   A person is hunting in
the woods of a stranger, or crossing a pasture of his neighbor,
and is wounded by a concealed gun, or his dog is killed by
some concealed instrument, or he is himself gored by an
enraged bull.   Is he in all these cases remediless because he
is there without consent ?   Or an intoxicated man is lying
in the traveled part of the highway, helpless if not uncon-

scious; must I not use care to avoid him? May I say that
he has no right to incumber the highway, and therefore
carelessly continue my progress, regardless of consequences?.
Or if such a man has taken refuge in a field of grass or a
hedge of bushes, may the owner of the field, knowing the
fact, continue to mow on, or fell trees, as if it was not so?
Or if the intoxicated man has entered a private lane or by-
way, and will be run over if the owner does not stop his
team which is passing through it, must he not stop them?
These are instances I am aware of personal rights, but what is
true in relation to the person is essentially true in relation to
dumb animals and other kinds of property, though perhaps the
rule would be applied in the latter case with less strictness.
It must be so, that an unnecessary injury negligently inflicted
in these and kindred cases is wrong and therefore unlawful.
If assailed, a man may do what is necessary to defend him-
self against the assault, but he may not become himself the
assailant. He may defend his property, but he may not in
doing it make use of unnecessary violence, and cease to use
all care as to the injury which he inflicts. The duties which
men owe to each other in society are mutual and reciprocal,
and faulty conduct on the part of another never absolves one
from their obligations, though such conduct may materially
affect the application of the rule by which this duty is to be
determined in the particular instance.

Let us suppose in this case, that instead of the plaintiff's
cattle, the plaintiff himself had been on the railroad track,
and that he was too deaf to hear the noise of the train or
the ordinary alarm given in such a case. This would cer-
tainly have been most culpable and inexcusable conduct on
his part, but would it have absolved the defendants from the
duty to exercise reasonable care if they saw the plaintiff, or
with proper attention might have seen him? Ought they
not in that case to check the speed of the train? May they
run over him merely because he is on the track? They may
well suppose that he is deaf, or blind, or insane, or bewil-
dered, and have no right, as we think, to continue their head-
way as if he was not there. If they are bound to ring their

bell or sound their whistle, as they certainly are, they may be bound for the same reasons to go further, and check their speed a little, or stop entirely.　As we have said preventive remedies must not be disproportioned, excessive or barbarous, and such was the remedy, we think, which was resorted to in this case.

There is yet another consideration which has a bearing on the question, which, according to some of the cases, is decisive against the present defense.　We mean that the negligence of the plaintiff, if there has been any, was not the proximate cause of the accident.　To be so it must have been simultaneous in its operation with that of the defendants, of the same kind, immediate, growing out of the same transaction, and not something distinct and independent, of a prior date, remotely related to the negligence of the defendants.

The question of proximate and remote negligence has generally arisen in cases of collision, where the conduct of the parties at the very moment, or the isolated transaction viewed by itself, is before the triers, who are called to judge upon the evidence with which party lies the fault of the collision.　In such cases the rule of law is of easy application, while in other cases it is more difficult and unsatisfactory, and often requires a broader range of reasoning.

In the case of *Davies* v. *Mann*, 10 Mees. & Wels., 545, the plaintiff, having fettered the fore feet of an ass belonging to him, turned it into a public highway; and at the time in question, the ass was grazing on the off side of a road, about eight rods wide, when the defendant's wagon, with a team of three horses, coming down a slight descent, ran against the ass and knocked it down, and, the wheels passing over it, it was killed.　The ass was fettered at the time, and the driver of the wagon was some little distance behind the horses. Erskine, J., told the jury, that though the act of the plaintiff in leaving the donkey in the highway, so fettered as to prevent his getting out of the way of carriages traveling along it, might be illegal, still, if the proximate cause of the injury was the want of proper conduct on the part of the driver of

the wagon, the action was maintainable against the defendant, and he instructed them, if they thought the accident might have been avoided by the exercise of ordinary care on the part of the driver, to find for the plaintiff. In the Exchequer, where this case was reviewed, Lord Abinger said: "Even if this ass was a trespasser, and the defendant might, by proper care, have avoided injuring the animal, and did not, he is liable for the consequences of his negligence, though the animal may have been improperly there." A new trial was denied.

The same is held in the case of *Trow* v. *The Vermont Central R. R. Co.*, 24 Verm., 494. The court there say: "Where the negligence of the defendant is proximate, and that of the plaintiff remote, the action can then well be sustained, although the plaintiff is not entirely without fault. This seems now to be settled in England and in this country. Therefore if there be negligence on the part of the plaintiff, yet, if at the time when the injury was committed, it might have been avoided by the defendant in the exercise of reasonable care and diligence, an action will lie for the injury. So in this case, if the plaintiff were guilty of negligence or even of positive wrong in placing his horse in the highway, the defendants were bound to the exercise of reasonable care and diligence in the use of their road and management of their train and engine; and if the injury arose from the want of that care they are liable."

The same doctrine is held in the case of *Kerwhacker* v. *Cleveland, Columbus & Cincinnati R. R. Co.*, 3 Ohio S. R., 172, and in that of *Cleveland, Columbus & Cincinnati R. R. Co.* v. *Elliot*, 4 id., 475. The language of the court in the latter case is:—"Suffering domestic animals to run at large, by means whereof they stray upon an uninclosed railway track, where they are killed by a train, is not in general a proximate cause of the loss, and hence, although there may have been some negligence in the owner in permitting the animals to go at large, such negligence being only a remote cause of their death, it will not prevent his recovering from the railroad company the value of the animals, if the imme-

diate cause of their death was the negligence of the compa-
ny's servants in conducting the train." And again :—" The
paramount duty of a conductor of a train is to watch over
the safety of the persons and property in his charge, subject
to which it is his duty to use reasonable care to avoid unne-
cessary injury to animals straying upon the road."

We will not pursue the discussion of this question, but
will proceed to adduce the authorities we have before us, in
addition to the three just referred to, in support of the main
doctrine of the case, which is presented in the earlier part of
this opinion. The three cases already cited to the question
of proximate and remote negligence, are clear and direct
authorities to the second and main point in the case, but we
proceed to mention several others.

In the case of the *New Haven Steamboat and Transport-
ation Company v. Vanderbilt*, 16 Conn., 421, this court held
it to be a principle of law, that while a party on the one hand
shall not recover damages for an injury which he has brought
on himself, neither shall he, on the other hand, be permitted
to shield himself from responsibility for an injury which he
has done, because the injured party was in the wrong, unless
such wrong contributed to produce the injury; "and even
then, (the court say) it would seem that the party setting up
such defense is *bound to use common and ordinary caution to
be in the right.*"

In *Birge* v. *Gardner*, 19 Conn., 507, a child, too young to
exercise any discretion, by shaking a gate, which the owner
had left carelessly standing on his own land, being a lane
through which children were accustomed to pass and repass,
pulled it over upon himself and thereby broke his leg; yet
he recovered damages, though he was a trespasser. The
court say in this case:— 'There is a class of cases, in which
defendants have been holden responsible for their misconduct,
although culpable acts of trespass by the plaintiffs produced
the consequences; and the fact that the plaintiff was a tres-
passer in the act which produced the injury complained of,
would not necessarily preclude him from a recovery against

a party for negligence." The same has been decided in a very recent case, in this court. *Daley* v. *The Norwich and Worcester R. R. Co.*, 26 Conn., 591. That was the case of a very young child, which, having escaped from the house of its parents, passed upon and along the railroad track, unconscious of danger and incapable of taking care of itself. The jury found that the child was injured through the carelessness of the company, and they were compelled to pay heavy damages.

The same was decided in the case of *Lynch* v. *Nurdin*, 1 A. & E., *N. S.*, 35, which was an action for negligence committed by the defendant's servant, in leaving his cart and horse standing for half an hour, in an open street, where the plaintiff, with other children, got into and about the cart, and teased the horse, until the horse moved forward, and with the cart ran over and greatly injured the plaintiff. Here, it will be observed, was a clear trespass on the part of the child.

It is said that these are peculiar cases, where *no blame* is attachable to the plaintiffs because of their age and incapacity; but they were *trespassers*, and could have been sued as such, which is quite as much as can be alleged against the present plaintiff. But let us proceed.

In the case of *Loomis* v. *Terry*, 17 Wend., 496, the defendant was sued for keeping dogs accustomed to bite mankind, which attacked and bit the plaintiff's son and servant, while hunting in the defendant's woods. The defense was that the person injured was a trespasser and brought the evil upon himself. The court held that, though he was trespassing, he did not thereby forfeit all protection against vicious dogs, and that the defendant should only have used such force as he found necessary to remove the intruder. This, say the court, is the utmost remedy which the law allows by the act of the party injured. May a man, they continue, knowingly keep on his premises a ferocious dog, in such a way that he will worry ordinary trespassers in the day time? The rule, they proceed to say, is as laid down by Dallas, J., in the case of *Deane* v. *Clayton*, 7 Taunt., 519, that the owner of property

may use proper means to repel violence, or to remove a trespasser, or trespassing cattle, taking care to use no unnecessary force, likely to destroy life or property.

We have a remarkable case in our own reports, in which this conservative doctrine is sanctioned and illustrated. *Johnson* v. *Patterson*, 14 Conn., 1. The defendant, having for a long time been annoyed by the plaintiff's fowls in his garden, notified him that he should scatter poisoned meal in his garden, and that the fowls would be exposed to be poisoned if he did not keep them at home. The plaintiff did not heed the threat, and the fowls, coming again into the garden, were poisoned by the meal and died. The owner sued and recovered their value. This court unanimously sustained the verdict as resting on sound principles of law and morality. They regarded the remedy as excessive, cruel and unnecessarily destructive; they considered that the ordinary course of the law furnished an adequate and peaceful remedy, by a repetition of suits, if need be, until the trespasser would be constrained to desist from a repetition of the wrong. Otherwise, it was said, if one may poison his neighbor's fowls with impunity he may shoot them, and if he may do this he may shoot his ox or his horse if it happen to stray into the adjoining lot. The celebrated case of *Deane* v. *Clayton* was examined by Sherman, J., in giving the opinion of the court, and he pointedly disapproved of the views of Judges Dallas and Gibbs, who held that such a mode of protecting one's *game* (viz. by spring guns and dog spikes,) was not excessive, cruel or unnecessarily destructive; and he agreed with the other two judges, Parke and Burrough, who held the contrary doctrine. And even the two first named judges said that they should agree with their brethren, if the defendant had been *present*, but, as he was not, and had given notice of the concealed dangers, they thought he might resort to these remedies, even though death might ensue. Now, so far as *absence* is material, (and it is held to be so in all the cases which justify a resort to deadly instruments for preventing a mere trespass,) it is a circumstance wanting in the present case. The defendants were present by their agents and ser-

vants, and active in conducting the train, and saw or could have seen the cattle, and could have anticipated a collision if they did not wholly or partially arrest the progress of the train.   No one will contend that a proprietor, being present, may shoot down a mere trespasser, or destroy a neighbor's cattle straying in the highway, as a remedy for a slight wrong or trespass, when there are other and more peaceful methods of redress, more compatible with the relations of society and the duties we owe to each other.

The same doctrine is maintained in *Chaplin* v. *Hawes,* 3 C. & P., 554, where Gibbs, Ch. J. remarks, " If the plaintiff's servant had such a clear space that he might easily have got away, then I think he would have been so much to blame as to prevent the plaintiff from recovering.   But on the sudden a man may not be sufficiently self-possessed to know in what way to decide, and, in such a case, I think the wrong doer is the party who is to be answerable for the mischief, though it might have been prevented by the other party's acting differently."

In the case of *Bird* v. *Holbrook,* 4 Bing., 628, a spring gun had been set secretly to prevent the repetition of theft, and the plaintiff, having climbed over the wall near the gun in pursuit of a stray fowl, was shot.   The defendant was held liable in damages, although the plaintiff brought the injury upon himself by trespassing upon the defendant's inclosure.

In the case of *Vere* v. *Lord Cawdor,* 11 East., 568, the plaintiff's dog was shot by the defendant's servant, because he was pursuing the defendant's hare in the defendant's close, and it was necessary to kill him in order to save the hare. Lord Ellenborough said:—" The question is, whether the plaintiff's dog incurred the penalty of death for running after a hare in another's ground !   And if there be any precedent of that sort, *which outrages all reason and sense,* it is of no authority to govern other cases."

In the case of *Raisin* v. *Mitchell & al.,* 9 C. & P., 613, the owner of a brig was sued for an injury done to a sloop.   The jury having found a verdict for £250, instead of £600, the amount of injury proved, on being asked by the court how

they made up their verdict, replied, that in their opinion there were faults on both sides. It was held, notwithstanding, that the plaintiff was entitled to the verdict, as there might be faults in the plaintiff *to a certain extent, and yet not to such an extent as to prevent his recovering.* The same doctrine was much discussed in *Deane* v. *Clayton,* where Dallas J. remarks:—" To the next class of decisions I also equally accede, namely, those which establish that you shall do no more than the necessity of the case requires, when the excess may be in any way injurious to another—a principle which pervades every part of the law of England, criminal as well as civil, and indeed belongs to all law that is founded on reason and natural equity."

So in the case of *The Mayor of Colchester* v. *Brooke,* 7 A. & E., *N. S.,* 339, although the plaintiff was chargeable with wrong and negligence in placing and keeping the deposit of a bed of oysters in the channel of a navigable stream, the defendant was held not to be justifiable in running his vessel upon the deposit, greatly injuring the oysters, when there was room to pass in the stream without it, and the injury could have been avoided by the use of reasonable care and diligence. This is only carrying out the rule, that though a man do a lawful thing, yet if any damage thereby be done to another which he could reasonably and properly have avoided, he will be held liable, according to the maxim *sic utere tuo ut alienum non lædas.* See *Vaughan* v. *Menlove,* 3 Bing., N. C., 468, and *Marriott* v. *Stanley,* 1 Man. & Gr., 568. The same is decided in *Norris* v. *Litchfield,* 35 N. Hamp., 271, where the court expressly deny the claim that if the plaintiff was a *wrong-doer* he could maintain no action whatever, however prudent and careful he may have been. They recognize as the true doctrine what was said by Lord Ellenborough in *Butterfield* v. *Forrester,* that "one's being in fault will not dispense with another's using ordinary care."

In *Dixon* v. *Bell,* 5 M. & S., 198, the court held that great care must be used by a person having the custody and handling of dangerous implements, like loaded guns and powerful machinery, and that slight negligence in another person who

was injured by the going off of the gun, was no objection to his recovering for an injury resulting from the negligence of the former.

We need not further pursue this topic, and certainly we need not adduce more authorities to establish a doctrine which is so plain and reasonable. We will, however, refer again to the case of *Kerwhacker* v. *Cleveland, Columbus and Cincinnati R. R. Co.*, 3 Ohio S. R. 172, for the purpose of remarking that the opinion of the court contains an elaborate, learned and conclusive argument upon all the points raised in the present case, and to commend it entire to every one who wishes to see all the law on this important subject, with the reasons on which it rests.

It must not be supposed that we have overlooked or slightly examined the numerous respectable authorities cited by the defendant's counsel. Some of them, as we view them, only add strength and force to the views which we have expressed; some rest on principles wholly distinct from those involved in the doctrine which we maintain; while others, and especially the cases from the New York reports, if we understand them, are at variance, as we most fully believe, not only with our own law but with the common law of England.

We do not advise a new trial.

In this opinion the other judges concurred; except Sanford, J., who having tried the case in the superior court did not sit.

New trial not advised.