WILLIAM T. WINDSOR, Respondent, v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, May 5, 1891.

1. **Railroads:** EFFECT OF FAILURE TO PLEAD MUNICIPAL ORDINANCE. The violation of a municipal ordinance limiting the rate of speed of a railway train is evidence of negligence on the part of the railway company, when the ordinance is not pleaded, though in such case it does not amount to negligence *per se.*

2. ———— : INJURY TO STOCK RUNNING AT LARGE IN VIOLATION OF STATUTE. When the owner of stock knowingly permits it to run at large in violation of statute, and it is injured by a railway train at a place where the railway company is not under legal obligation to fence its road, the railway company is responsible to the owner, if the injury was caused by the gross, wanton or wilful negligence of its employes, but not if such injury resulted merely from the violation of a municipal ordinance limiting the rate of speed of railroad trains.

3. Instructions: ADMISSIONS BY PARTY AS A WITNESS. If such owner, when called as a witness by the railway company, testifies that he knew his stock was running at large, his knowledge should be treated as a conceded fact, and should not be submitted to the jury as matter in issue.

*Per Thompson, J. :—*

4. Railroads : INJURY TO STOCK RUNNING AT LARGE IN VIOLATION OF STATUTE. Although the owner of stock knowingly permits it to run at large in violation of statute, he may recover for an injury to it by a railway train, if such injury was due to the negligence of the employes of the railway company in running the train ; and the railway company is thus liable, whether such negligence was gross or wanton, or consisted only of the want of ordinary or reasonable care.

*Appeal from the Monroe Circuit Court.*—HON. THOS. H. BACON, Judge.

REVERSED AND REMANDED.

*J. H. Whitecotton* and *N. O. Berders,* for appellant.

*R. B. Bristow,* for respondent.

ROMBAUER, P. J.—This is a common-law action, instituted in the circuit court, to recover damages for the negligent killing of plaintiff's cows by the defendant's locomotive. The plaintiff gave evidence tending to show that his cows were seen on the track, when the train was about a mile and a half off ; that thereafter one of the cows left the track and wandered off a slight distance, but returned to the track when the train came within fifty yards ; that the train was running at a rate of

Windsor v. The Hannibal & St. J. Ry. Co.

speed of ten or twelve miles per hour within the limits of Monroe City, where the accident occurred, and that trains were restricted by an ordinance of the city to a speed of six miles an hour within its limits.

The defendant gave evidence tending to show that the train which killed the cows was a heavy freight train; that the engineer first discovered the cows grazing near the track when the train was about five hundred feet from them; that they came on the track when the engine was within forty feet; that the stock alarm was immediately given, the engine reversed and the brakes set, and everything done that could be done to bring the train to a halt; that the speed of the train within the city limits on that occasion was less than six miles an hour.

The defendant also gave evidence showing that the law restraining stock from running at large was in force in Monroe county at the date of the accident. The plaintiff himself was called as a witness by the defendant, and testified that he had secured the cows in a barn in the morning, but about an hour before the accident he saw them standing outside of the barn, within a few feet of the defendant's right of way, and no fence or obstruction between them and the defendant's track; that he was a hotel-keeper, was then preparing dinner, and was short of help, and had no time to go out and attend to the cows; and that he did not see them again until after they were killed.

The defendant asked instructions in the nature of a demurrer to the evidence both at the close of the plaintiff's case and at the close of the entire evidence. The court refused these instructions. There was a finding for the plaintiff, and the refusal of these instructions is among the errors complained of.

That the defendant's demurrer to plaintiff's evidence was properly overruled, admits of no controversy. There was evidence tending to show that the train, shortly before the accident, and before it was checked,

was running within the city limits at a rate of speed prohibited by ordinance, and inferential evidence at least that this fact contributed to bring about the accident. Although the ordinance was not pleaded, and did not, of itself, furnish a cause of action, its violation was evidence of negligence. *Robertson v. Railroad*, 84 Mo. 119.

The next question is, whether the court erred in overruling the defendant's demurrer to the evidence at the close of the defendant's case. As the credit to be given to the defendant's witnesses was in the first instance a question for the jury, which the court could not withdraw from their consideration, this question must be answered by determining the effect of conceded facts shown by the defendant's evidence.

That the law restraining stock from running at large was in force in Monroe county at the date of the accident, is conceded, as is also the fact that the plaintiff knew that his cows were at large and in the vicinity of the track for at least an hour prior to the accident. The plaintiff claims that this is not such contributory negligence as would debar him from recovery as a matter of law, and cites in support *Spencer v. Railroad*, 25 Iowa, 139, and *Fritz v. Railroad*, 34 Iowa, 337. But both of these cases were statutory actions for injuries caused by a failure to fence.

In the first case Judge COLE, speaking for the court, says : " Under the ordinary and well-recognized rules of law it is very clear that, since the plaintiff was himself guilty not only of negligence, but of the violation of a positive regulation of law, in suffering to let his hog run at large, he could not recover if the action was one at common law." The liability of the defendant in that case was put upon the ground that the Iowa statute made the railroad absolutely liable for stock injured by *a failure to fence*, unless the injury was occasioned by the wilful act of the owner. It did not appear in

that case whether the hog was running at large, by accident, or by the carelessness of the owner.

So in *Fritz v. Railroad, supra*, the decision was placed upon the statute, which provided : "Any railroad hereafter running or operating its road in this state and failing to fence its road on either or both sides thereof, against live stock running at large, at all points where said road has a right to fence, shall be absolutely liable to the owner of any live stock injured." The only contention in that case was whether the words *running at large* should be confined in their meaning to legally or properly running at large, and it was held that they could not be so confined. But in the case at bar the action is not one under the fencing law. The place, where the animals were killed, is conceded to have been one where the railroad was under no obligation to fence. The fact that the animals were at large with the owner's knowledge is shown by the plaintiff himself, and, therefore, is also a conceded fact.

In *Bowman v. Railroad*, 85 Mo. 533, a case similar in its facts to the present, an ordinance of the town of Louisiana prohibited hogs from running at large, and railroad trains from running at a greater speed than six miles an hour within the city limits. Plaintiff's hog was killed by a train which was running in excess of this rate of speed, and it was claimed that this negligence was the cause of the accident. The supreme court held : "That, if it be shown that the killing or injury was caused by this illegal rate of speed, then the defendant is liable ; and would be liable even though the sow was at large in violation of another ordinance, *provided*, it be shown that she was so at large without the knowledge and consent of the plaintiff, and, provided further, that the defendant's employes could by the exercise of ordinary care and prudence have stopped the train so as to prevent the killing." This case certainly holds impliedly at least that, if the plaintiff knew that his stock was at large, in violation of law

he could not recover, at least, not in the absence of a wilful or wanton injury to the stock, or gross negligence on part of the defendant's employes.

In *Schwartz v. Railroad*, 58 Mo. 207, the animal killed was a bull, which it was claimed was running at large in violation of law. The defendant contended that it was not liable, unless the animal was killed by the gross negligence of its employes, but the court held the animal was not unlawfully at large under the applicatory statute, until after the expiration of three days' notice served upon its owner, and hence the defendant's claim was untenable. This ruling was affirmed in *Owen v. Railroad*, 58 Mo. 387. But none of these cases hold that the railroad company is under the same obligations of care touching cattle, which are on its track in violation of the law prohibiting them from running at large, as they are in regard to cattle which are on the track where it is neither the duty of the railroad company to fence, nor the duty of the owner to restrain the cattle.

On the other hand no case can be found in this state, which goes to the extent of holding that the railroad is not responsible for injury to trespassing cattle, when such injury was caused by the gross, wanton or wilful negligence of its employes. If the plaintiff's evidence is true, and for the purposes of a demurrer we must assume it to be true, one of these cows never left the track from the time that the train was over a mile from them on a straight and almost level track, with nothing to obstruct the view up to the time that they were struck; nor was the speed of the train checked at all, but the train passed straight on after striking them without checking its speed either before or after. There was, therefore, some evidence of gross or wanton negligence, and the court did not err in refusing to withdraw the case from the jury, even at the close of the defendant's evidence.

But we are bound to reverse the case for misdirection of the jury by the court. The court submitted the

question to the jury, whether the animals were at large with the owner's consent, when, touching that matter, there was no dispute whatever. The court also charged the jury in sixteen distinct instructions, which are in a great measure inconsistent and irreconcilable, it would seem, on the theory that the defendant was held to the same reasonable care, as if the cattle had been lawfully upon the track, when the court should have charged the jury pointedly that, unless the cattle were injured or killed by the gross or wanton negligence of the defendant's employes ( defining the terms thus used ), there could be no recovery, but if they were injured by such negligence, the plaintiff was entitled to a verdict.

The judgment is reversed, and the cause remanded. Judge BIGGS concurs. Judge THOMPSON concurs in the result.

THOMPSON, J. ( *concurring* ).—I concur in the result which has been reached in this case, but I do not concur in the expressions of doctrine in the opinion concerning the law of contributory negligence. The opinion proceeds upon the view that, if a man allows his cattle to run at large in violation of law, and they are killed by a passing railway train at a point where the railway company is not bound to fence its track, the owner of the cattle can only recover damages from the company on proof of gross, wanton or wilful negligence by its servants. I do not want the profession to suppose for one moment that I think this proposition to be the law. The law of England, the general law of America, and the law of Missouri is settled in such a case to be that the railroad company is liable, not only for gross or wanton negligence, but, also, for the want of ordinary or reasonable care. It was settled in the English Court of Exchequer in 1842, in the leading case of *Davies v. Mann*, 10 Mees. & W. 545, that, although the owner of a domestic animal negligently exposes it to an injury upon the highway, a person passing along the highway who injures

it, when so exposed, through the want of ordinary care, must pay damages to the owner. The doctrine of that case was reaffirmed in *Tuff v. Warman*, 2 C. B. (N. S.) 740 ; s. c., 5 C. B. (N. S.) 573, and both were in turn reaffirmed in the House of Lords in *Radley v. Railroad*, 1 App. Cas. 754. Acting on the same principle, the court of Queeen's Bench held that, where a man exposes his property in such a manner that it is a public nuisance, as where he plants a bed of oysters in a public river, and another person navigating the river negligently injures the property, he must pay damages if he was guilty of a want of ordinary care. *Mayor of Colchester v. Brooke*, 7 Q. B. 339. The principle of these decisions has been adopted by nearly all the courts of this country, and applied with almost unvarying uniformity. The rule has been applied with great uniformity in cases, where the plaintiff has exposed his person or his property to injury through negligent or even intentional violations of the law ; the fact, that he has exposed himself or his property to injury through his own act as a law-breaker, has been held not to justify another person in inflicting a negligent injury upon him or upon his property, but the obligation, on the part of the other person, of exercising reasonable care to avoid such an injury remains just as in other cases. *Steele v. Burkhardt*, 104 Mass. 59 ; s. c., 6 Am. Rep. 191, and note ; *Baker v. Portland*, 58 Me. 199 ; s. c., 4 Am. Rep. 274 ; *Daviston v. Portland*, 8 Reporter, 172 ; *Neanow v. Uptech*, 46 Wis. 581 ; *Stofford v. Harlow*, 3 Allen, 176 ; *Hall v. Ripley*, 119 Mass. 135 ; *Welch v. Wesson*, 6 Gray, 305 ; *Simmonson v. Spellenmerf*, Edm. Sel. Cas. 194 ; *Aston v. Heaven*, 2 Esp. 533.

Proceeding upon the same principle, cases almost without number hold that the fact, that the plaintiff was a trespasser at the time of being injured, is no defense, provided the defendant might have avoided the injury by the exercise of ordinary care. The reason is

obvious ; the mere fact of a man being negligent or vio-
lating the law, or being a trespasser, does not authorize
another man to take the law into his own hands and
damage him, nor does it deprive him of the protection
of the law, or of the right to have others exercise due
care to avoid injuring him. *Daly v. Railroad*, 26 Conn.
591 ; *Marble v. Ross*, 124 Mass. 44 ; *Birge v. Gardiner*,
19 Conn. 507 ; s. c., 50 Am. Rep. 261 ; *Isbell v. Rail-
road*, 27 Conn. 393 ; *Kerwhacker v. Railroad*, 3 Ohio
St. 172 ; *Whirtley v. Whiteman*, 1 Head. 610 ; *Little
Rock, etc., Ry. Co. v. Bankhurst*, 36 Ark. 371 ; *Her-
rington v. Railroad*, 10 Ired. 402 ; s. c., 51 Am. Dec.
395 ; *Meeks v. Railroad*, 56 Cal. 13 ; s. c., 38 Am.
Rep. 67.

Our supreme court has acted upon these principles
repeatedly. In the earliest case of this kind, which I
have been able to find ( *Adams v. Ferry Co.*, 27 Mo. 95),
the plaintiff moored his ferry boat in a prohibited place
at a wharf, and, while it was lying there, it was struck
by a ferry boat belonging to the defendant. It was held
that the plaintiff might recover damages, if the defend-
ant had been guilty of a want of ordinary care. The
leading cases of *Davies v. Mann*, 10 Mees. & W. 545 ;
*Kerwhacker v. Railroad*, 3 Ohio St. 189, and other cases
holding the same doctrine, were analyzed and approved.
Judge SCOTT, in giving the opinion of the court, dis-
criminated with his usual care and judgment between
what he called active and passive negligence. He said :
" We conceive the law as deduced from them to be, that,
although where both parties are at fault, where there is
negligence on both sides, and both *actively* contribute
to the injury at the time of its commission, there can be
no recovery ; yet, where there is a mere passive fault or
negligence on the part of the plaintiff, the defendant is
bound to the observance of ordinary care and prudence
in order to avoid doing him a wrong. In the case
before us the boat received the injury complained of
when she was moored, and although she was in a

prohibited place,—one from which she had been lawfully ordered to be removed,—the defendant was not released from the obligation imposed both by law and sound morality of using ordinary care and diligence in order to avoid injuring her. If by the fault of the plaintiffs, in leaving their boat in the place where it was found, the defendant would not avoid injuring her, by the observance of ordinary care and prudence, they would be without redress.''

The doctrine of the leading case of *Davies v. Mann* has been formulated and applied in this state, and in this court, in cases almost without number. The proposition of law there decided was, that, although the plaintiffs may have been guilty of some negligence, which remotely contributed to the injury, yet, if the defendant could, by the exercise of ordinary care and prudence have prevented it, he is nevertheless liable. I refrain from citing the cases. They are familiar to the profession. I merely refer to Stark's Digest, verb ''negligence,'' section 290, and cases there cited. They are only a part of those in this state which hold this principle. A late and very distinct reaffirmation of the principle is found in *Dunckman v. Railroad*, 95 Mo. 232, 244.

In view of these decisions I must protest against quoting with approval, as expressing the law of this state, the *dictum* of Judge COLE in *Spencer v. Railroad*, 25 Iowa, 139, concurred in by my associates. It is opposed to the general English and American law, and is explicitly opposed to the doctrine of the supreme court of this state in *Adams v. Ferry Co.*, *supra*, as shown by the facts above stated and the language above quoted. I see nothing in the case of *Bowman v. Railroad*, 85 Mo. 533, which shows a purpose on the part of our supreme court to overturn the salutary principle of law above stated by Judge SCOTT, and so often applied in this state in subsequent cases. On the other hand, that case is a distinct reaffirmation of the principle, as

applied to the case of a trespassing animal on a railway track. One of the instructions of which the defendant complained, which was given at the request of the plaintiffs, was as follows: "If the defendant's employes could, by the exercise of ordinary care, have stopped the train so as to prevent the killing of the hog, the verdict should be for the plaintiff." While this instruction does not seem to have been specially discussed in the *per curiam* opinion which was rendered, it was set out and approved, and the court, in its opinion, makes one of the hypotheses of a recovery to be, "that defendant's employes could, by the exercise of ordinary care and prudence, have stopped the train so as to have prevented the killing."

The opinion delivered by my associates concludes by stating that: "The court should have charged the jury pointedly that, unless the cattle were injured or killed by the gross or wanton negligence of the defendant's employes (defining the terms thus used), there could be no recovery; but, if they were injured by such negligence, the plaintiff was entitled to a verdict." I regard this as being in the nature of a direction upon which the case is to be retried. I do not concur in it at all. I regard it as involving an attempt to introduce a new principle into the law of this state, and by a court occupying a subordinate position in our appellate system. But, as I concur in the result, I do not see that I can ask that the case be certified to the supreme court.