### STATE v. THE MANCHESTER & LAWRENCE RAILROAD.

In this State, the proceeding against a railroad for negligently causing the death of any person, not in the employ of said road, though required to be by indictment, and necessarily criminal in form, is to be considered and treated as a civil action for the recovery of damages, in its main features; and the same rules of evidence and principles of law are to be applied in such case as are applied in other civil causes.

So far as the form of the indictment is concerned, it must be governed by the principles of the criminal law.

Where a person is charged with *negligently* doing or omitting an act, and the evidence is conflicting, it may be competent to show that he had performed or omitted the same act in the same way before, as tending to show that he did or omitted the act at the time in question.

Where the State in case of an indictment, or the plaintiff in a civil action, abandons any charge or claim contained in the indictment or declaration, evidence upon such charge or claim is no longer necessary or competent.

In case a person, in attempting to pass in a public highway over a railroad crossing on grade, should be killed by the engine of said railroad, and the want of ordinary care on the part of the deceased proximately contributed to his death, there can be no recovery in a proceeding under our statute, even if the railroad or their servants were guilty of negligence.

But if, in such case, the deceased was negligent in attempting to cross at

this particular time or under the particular circumstances of the case, still the defendants may be convicted in such proceeding, if. it appear that the negligence of the proprietors of the railroad or their servants was the more proximate cause of the injury.

In such case, if the deceased came upon the railroad track, at the crossing, without ordinary care,—still, if the servants of the road, after they saw his danger, might have avoided the fatal result by the exercise of ordinary care, and through their gross negligence drove upon him and killed him, they would be liable.

In general, there can be no recovery against a town for injuries received from defects in a highway, when the plaintiff's negligence contributed to the injury; but the case is different when both parties are present and acting as voluntary agents. Where both are held responsible for the use of ordinary care, there the question of remote and proximate cause may properly be considered.

The term proximate cause was substantially the same, originally, as the *causa causans;* or the cause necessarily producing the result. But the practical construction of the term by the courts has now come to be,— the cause which naturally led to, and which might have been expected to produce, the result.

The distinction between negligence and gross negligence, carelessness and gross carelessness, is to a great extent merely verbal. But indictments and declarations founded on special statutes should follow the form of such statutes, and should use the same words, and in the same sense that the statute uses them.

If an indictment founded upon a special statute charge an offence in the terms and words of the statute, that is generally sufficient; and in a· civil proceeding for damages, or in an indictment like this, under our statute, it is not necessary to allege that the plaintiff was in the exercise of ordinary care.

An indictment under our statute, which charges, in the same count, that the death of the deceased was caused by the negligence and carelessness of the proprietors of the railroad, and by the unfitness of their servants and agents, and by the gross negligence of their servants, and by the carelessness of their servants, is not objectionable on the ground of duplicity.

And if the proof is that there was an act of negligence on the part of the proprietors, and an act of gross negligence by one servant, and another act of carelessness by another servant of the road, and the life was lost by the combined effect of these three acts, the company would be liable as much as though the death had been caused by either of these acts alone.   ·

A crime, which may be committed by the agency of several means, is well

described if charged to be committed by the agency of all, and is well proved if the evidence sustains the charge thus made.

But where two distinct offences, requiring different punishments, are alleged in the same count, and the defendant is convicted, the judgment will be arrested.

In an indictment against a railroad, under our statute, it is not necessary to state by what particular acts of negligence or carelessness, or by what special unfitness of servants, the accident occurred.

Ordinary care is not only such care as people in general would exercise, but such as they would exercise under the special circumstances of each particular case.

In deciding whether any party has been negligent, if there is any conflict in the testimony, and ordinarily when there is not, all the facts and circumstances of the case should be submitted to the jury, with instructions that, in deciding whether the party was in the exercise of ordinary care, or was grossly negligent, they are to consider the position of the party, his business, his duties and responsibilities; and that the same act or omission which, under some circumstances, would not show any degree of negligence, might, under others, show want of ordinary care, and, under still different circumstances, might show gross negligence; and the question should be settled by the jury as a question of fact, and not by the court as a question of law.

Hence the absurdity and injustice of assuming any test of negligence, or of contributory negligence, which is made to apply to all persons, at all times, in all places, and under all possible circumstances, as a certain, conclusive, and incontrovertible test of such negligence.

This is an indictment presented at the April term of this court, 1871. The bill contains three counts. In the first, it is alleged "that on the seventeenth day of December, 1870, the defendants, being proprietors of a certain railroad, &c., at Salem, in said county, by their servants in this State, to the jurors aforesaid unknown, did negligently and carelessly run a certain locomotive steam engine and a certain train of cars, on said Manchester & Lawrence Railroad, upon and across a certain public highway, at a place called Ballard's crossing, in Salem" (here follows a description of the highway), "on the grade or level of said highway, at a greater speed than six miles per hour, to wit, at the speed of twenty-five miles per hour, and, by the said negligence and carelessness of their servants aforesaid, did then and there, at said Ballard's crossing, surprise, overtake, strike, and throw down one Benjamin Woodbury, of Salem aforesaid, yeoman, who was then and there not in the employment of said corporation, and was then and there peaceably and lawfully passing along said public highway at the crossing aforesaid, and him the said Woodbury thereby, and by the negligent, careless, and rapid running of the engine and cars aforesaid by the said servants of

said railroad corporation, did then and there instantly kill." Then follows an allegation that one Gordon is administrator of the estate of deceased ; that Sarah Woodbury is his widow ; and that Hannah M. Gordon and others are his surviving children. "And so the jurors aforesaid, upon their oath aforesaid, do say that the life of the said Benjamin Woodbury, he being then and there a person not in the employment of said corporation, was lost as aforesaid, by reason of the negligence and carelessness of their servants aforesaid, in this State, contrary to the form of the statute," &c.

The second count alleges that the defendants " did negligently and carelessly omit to erect gates, or to place signals, notices, watchmen, or guards at a certain dangerous crossing in said Salem, called Ballard's crossing, where said Manchester & Lawrence Railroad crosses a certain public and frequented highway at the grade or level thereof " (here follows a description of the highway), " and by.the agents and servants of the said Manchester & Lawrence Railroad corporation in this State, to the °jurors aforesaid unknown, at the crossing aforesaid, in Salem aforesaid, on the seventeenth day of December aforesaid, did with gross negligence and carelessness and unlawfully run a certain locomotive steam engine and a certain train of cars, all of the proper goods and chattels of said Manchester & Lawrence Railroad corporation, upon the said Manchester & Lawrence Railroad, across said public highway at said Ballard's crossing, at the grade or level of said public highway, at a greater speed than six miles per hour, to wit, at the speed of twenty-five miles per hour, and did then and there, by the gross negligence and by the carelessness of the said corporation and of their agents and servants aforesaid, in this State, omit to give suitable and proper notice of the approach of said engine and train to said crossing, so that, at the crossing aforesaid, the said engine and cars did suddenly surprise, overtake, strike, and throw down one Benjamin Woodbury, of Salem aforesaid, yeoman, who was then and there not in the employment of said corporation, and was then and there peaceably riding and passing in a wagon, drawn by two horses along the said public.highway at the crossing aforesaid, and him, the said Benjamin Woodbury, did then and there mangle and kill, by which gross negligence and carelessness of said corporation, and of its agents and servants aforesaid, the life of the said Benjamin Woodbury was then and there lost as aforesaid." (Then follows a statement of the administrator, widow, and children of the deceased, as in the first count.) "And so the jurors aforesaid, upon their oath aforesaid, do say that the life of the said Benjamin Woodbury, he being a person not then and there in the employment of said corporation, was lost as aforesaid, by reason of the negligence and carelessness aforesaid of the said corporation, proprietors of the railroad aforesaid, and by the unfitness and gross negligence and by the carelessness of the agents and servants aforesaid of said corporation, in this State, contrary," &c.

The third count alleges that the defendants, " by their agent or agents, servant or servants, in this State, to the jurors aforesaid

unknown, did, by reason of the negligence and carelessness of said corporation, and by the unfitness and gross negligence and by the carelessness of their servants and agents in this State, to the jurors aforesaid unknown, so mismanage the said Manchester & Lawrence Railroad, and so neglect to place proper gates, fences, guards, and watchmen, and did so neglect to give proper notice, warning, and signals of the approach of the engine and train hereinafter mentioned, and did so improperly, rapidly, recklessly, and furiously run and drive the same, that, on the seventeenth day of December last past, at Salem, a certain locomotive steam engine and a certain train of cars drawn thereby, all belonging to said corporation, and run and driven then and there by the said servants and agents of said corporation, at a place in said Salem called Ballard's crossing, where said railroad crosses at grade a public and frequented highway" (here described), " did, with great speed and violence, suddenly overtake, run against, and strike the wagon and person of one Benjamin Woodbury, of Salem aforesaid, yeoman, the said Woodbury not then and there being in the employment of said corporation, and being then and there peaceably and lawfully driving a pair of horses attached to a wagon over said crossing and along said public highway, and him, the said Woodbury, by the said negligence and carelessness of the said corporation, and by the said unfitness and gross negligence, and by the said carelessness of their servants and agents aforesaid, in this State, did then and there injure, bruise, wound, and mangle in his limbs, body, and head, of which injuries, bruises, woundings, and mangling, he, the said Woodbury, then and there died." (Here the administrator, widow, and children of the deceased are described.) "And so the jurors aforesaid, upon their oaths aforesaid, do say that the life of the said Woodbury, he being a person not then and there in the employment of said corporation, was lost as aforesaid by reason of the negligence and carelessness aforesaid of the said corporation, proprietors of the said railroad as aforesaid, and by the unfitness and gross negligence and by the carelessness of the servants and agents aforesaid of said corporation, in this State, contrary," &c.

The defendants pleaded the general issue. The accident occurred on the passage of the up train, on the morning of December 17, 1870 ; and it appeared that the same engineer and fireman, who had charge of the locomotive on that occasion, had driven the same morning up train for the year preceding. Subject to the defendants' exception, the State was permitted to prove that, during the preceding year, the same train sometimes passed the crossing where the accident happened without sounding the whistle or ringing the bell, and were permitted to argue upon said testimony, in connection with other evidence, for the purpose of showing that the engineer and fireman of the defendants did not, on the occasion of the accident, seasonably sound the whistle and ring the bell. And the prosecutors had proved that a general rule of the corporation required the bell to be rung and the whistle sounded invariably before passing a crossing. Upon this subject the court charged the jury that they might consider said testimony as

bearing upon the question whether the bell was rung and whistle sounded at the time of the accident, but not for any other purpose.

The defendants offered to prove by John Wadleigh, the engineer who drove the train, that though he had run trains for fifteen years, eight of which were upon the defendants' railroad, no accident had ever occurred under his management, for the purpose of showing his fitness for his place, and that the defendants were not negligent in appointing him thereto; but there being no claim on behalf of the State that the defendants were liable by reason of the unfitness of their servants, the court excluded the evidence, and the defendants excepted.

At the trial, the prosecutors proved, without contradiction, that Benjamin Woodbury, deceased, had lived many years within sight of the defendants' railroad, at one point, but not at the crossing, and within hearing of their passing trains, his house being about half a mile distant from the crossing; that his land extended from his house to the railroad, and across the same at a place near the crossing; that he had crossed the railroad at this crossing daily for a long time; that he left his dwelling-house at about nine o'clock in the morning of the day of his death, in the full possession of all his senses, and in good health, with a team of two horses and a wood wagon, accompanied by his grandson, a boy eleven or twelve years old; and, standing with the boy in his wagon, drove his horses at a slow pace or walk directly to and upon the railroad at the place where the highway crosses at grade; that, for the space of four or five rods, the deceased was in full view of the railroad from the "overhead bridge" to the crossing, a distance of eleven hundred feet or more, with the exception of an interruption for a few feet caused by a row of apple-trees and fence, and could have seen a train approaching at points upon the railroad between the bridge and the crossing, where the view was not obstructed by the apple-trees and fence; that other witnesses of the State heard the rumbling of the approaching train while it was yet more than one thousand feet from the crossing, and the State produced no evidence that the deceased looked up or down the track, or paid any attention whatever to the railroad train; that he was struck by the train, which was about three or four minutes behind its regular time, and was killed. The State proved that the grandson of the deceased looked at the clock of the deceased, at his house, when he left the house to harness the horses; that it was then four minutes of nine o'clock by said clock, and that he communicated, before starting, this information to the deceased, who inquired of him what time it was; that they at once harnessed the horses and drove to the railroad crossing, one half of a mile distant, upon a walk, and that the train was due at the crossing at fifteen minutes before nine o'clock. The train was passing at its usual speed of about thirty miles an hour. There was direct evidence tending to show that the whistle was not sounded nor the bell rung on approaching the crossing, as required by the regulations of the company.

Upon this evidence, and before offering any evidence thereupon, the defendants moved the court to direct the jury to bring in a verdict for

the defendants, alleging the following reasons : 1. Because, to go upon a railroad track without looking to see if a train is coming, is in itself such want of due care and diligence as to be conclusive against the prosecution. 2. Because the State has not shown the exercise of any degree of care on the part of the deceased. 3. Because the State has shown that the deceased was careless in that his residence was near the crossing, and was familiar with the same, and he was aware of the time of the passage of the train, and yet took no measures to assure himself whether the train had passed. 4. Because it appears that, at the residence of the deceased, he could see the cars and hear them when the whistle was sounded, and did commonly hear it; and as he had neither seen nor heard any cars that morning before leaving his house, it was carelessness in him to conclude that the train had passed, and to go upon the track on that presumption, without looking to see if the train was in sight. The motion was overruled.

The defendants then offered evidence tending to show that, at the time of the accident, and at all times at this crossing, the customary signals were given, and proper care used by the corporation and its servants. That the engineer and fireman of the train saw the deceased with his team slowly approaching the crossing, when the team was about eight hundred feet from the crossing, and when the deceased was some four or five rods of the crossing. That the bell of the engine was rung from a certain bridge, distant one thousand one hundred and thirty-three feet from the crossing, until the train reached the crossing; and that the whistle for crossing was sounded at the whistling-post, eight hundred and fifty feet from the crossing. That the engineer and fireman did not conclude that the deceased would attempt to cross, until the engine was within ten or fifteen rods of the crossing, when the signal of danger was given, and the engine reversed, and brakes applied, but too late materially to check the train or prevent the accident. Most of these facts were controverted by the State, and were the main matters in dispute at the trial. The jury visited the crossing, and a plan was used in evidence which was agreed by both parties to be correct. Material points in controversy between the parties were, whether the signal or crossing-whistle was sounded at the post fixed by the corporation eight hundred and fifty feet from the crossing, or not until the train had passed that point, and arrived so near to the crossing as to render it impossible for them to stop the train, or materially check its speed, before reaching the crossing, or for the deceased to avoid the collision; and whether the bell was rung; and whether the engineer and fireman discovered Mr. Woodbury's danger and the imminent risk of a collision in season, so that they might, and, in the exercise of proper care, ought to have stopped or slackened the speed of the train, so as to avoid the accident.

The court charged the jury, among other things, that the great question in the case was, whether Mr. Woodbury came to his death on the day named by reason of the gross carelessness or negligence of the servants or agents of the Manchester & Lawrence Railroad; that gross

carelessness is the want of slight care;—and they were further told, in the course of the charge, that they were to consider what would be ordinary and proper and suitable care on° the part of the agents of the corporation in charge of this train; that all the circumstances appearing in the case were to be considered by them as bearing upon the degree of care which would be reasonable and proper to be exercised on the occasion. What would be ordinary care, and what would be such care as men of ordinary capacity would exercise under these circumstances? The degree of care which would be reasonable in one position or on one occasion, would be quite inadequate upon another occasion. It must be measured by the circumstances under which the act is done. It is the common sense of every man, that the degree of care which would be reasonable and proper in controlling the powerful element steam, and in the management of such a dangerous instrument as a locomotive, would be very different from the degree of care that would be reasonable care, and proper, in driving a team of horses and wagon upon the highway; that it was for the jury to say whether the omission of the engineer to sound the whistle at the whistling-post would be gross negligence on his part that would make the company liable for the death of the deceased, provided his death was the consequence of that neglect; that it was for them to say what degree of care would be a reasonable amount of care to be required of a man of ordinary capacity, in crossing at the time and under the circumstances under which the deceased undertook to cross. The court further charged the jury that if the deceased was negligent in crossing at this particular time, the defendants still might be convicted if it appeared that the negligence of the servants of the defendants was the more proximate cause of the injury; and that, " should they find upon the evidence in the case that, although Benjamin Woodbury, carelessly, without the exercise of due care, came upon the track, still, if the defendants' servants, after they saw his danger, might have avoided the fatal result by the exercise of proper care, and through their gross negligence drove upon him, they would be liable."

The defendants requested the court to charge the jury that " a railroad crossing is a place more dangerous than other portions of a highway generally are. A person who approaches a railroad crossing, knowing it to be such, is bound to conduct himself as if it were dangerous. If he approaches it without regarding it at all, neither looking nor listening for a train, nor taking any other measures to inform himself that the way is clear, he does not show that he exercised the care of a prudent man." And that, if this instruction be denied, the court would charge the jury that " a railroad is a place more dangerous than other portions of a highway usually are. A person who approaches a railroad crossing, knowing it to be such, being aware that the time of his approach was about the time of the regular passage of a train, and not knowing whether the train had passed or not, is bound to conduct himself as if it were dangerous; but, if he approaches without regarding it at all, neither looking nor listening for a train, nor taking any

other measures to inform himself that the way is clear, he does not show that he exercises the care of a prudent man." And "that the deceased did not use reasonable care if he did not look out for the train, if he knew that he was approaching a railroad crossing." And that, "if the railroad was negligent and grossly negligent, still, if the otherwise inevitable, or natural and probable, loss of life would not have occurred if the deceased had himself been in the exercise of ordinary prudence, the statute does not apply, and the defendants cannot be convicted." All of which requests were refused by the court.

The jury were instructed on this point, that, if the want of ordinary care on the part of Mr. Woodbury proximately contributed to his death, there can be no recovery here, even if the railroad or their agents were in fault and were guilty of negligence. The care and diligence and circumspection required of Mr. Woodbury on this occasion are measured by the circumstances in which he was placed, in the same way as the care and diligence required of the servants of the corporation are measured by the circumstances under which they were placed. You have seen the crossing;—if you should be of opinion that it is a dangerous crossing, it is for you to say whether or not a greater degree of care would be required to constitute reasonable and ordinary care on the part of a man crossing it, than if it were not. You are to consider all the circumstances,—whether the crossing of the track is dangerous; whether ordinary care would require that a man should look for the approach of a train.

The jury returned a verdict of guilty; and the defendants moved to set the same aside for supposed error in the before named rulings, and because the verdict was against the evidence and unsupported by evidence upon the points : (1) That the deceased at the time of the accident was using ordinary, reasonable, and proper care. (2) That the life of the deceased was lost by reason of the negligence or carelessness of the defendants, or (3) that his life was lost by the unfitness, or by the gross negligence, or by the gross carelessness of the servants or agents of the defendants ; (4) and because there was no evidence in the cause to show that the want of care of the deceased was not the proximate and immediate cause of the injury.

The defendants also moved that judgment be arrested, and that they may be discharged for insufficiency of the indictment, in this : 1. That it is not alleged in the bill that the deceased Benjamin Woodbury was in the exercise of due and reasonable care at the time of the accident. 2. That the indictment is double, because it is charged therein that the life of said Woodbury was lost (1) by the negligence and carelessness of the defendants ; (2) by the unfitness of the servants and agents of the defendants ; (3) by the carelessness of the servants and agents aforesaid ; and these charges are joined in the same counts in the bill. 3. The first count in said indictment alleges that the life of said Woodbury was lost by the negligence and carelessness of the servants of the defendant corporation, but does not allege that the said life was lost by their unfitness, or gross negligence, or gross carelessness. And said

count is double in that it charges that the life was lost by the negligence and carelessness of the corporation, and by the negligence and carelessness of their servants.    4. Because the second and third counts are double in that they charge that the life of said Woodbury was lost (1) by the negligence and carelessness of the corporation ; (2) by the unfitness of its servants, (3) by the gross negligence of said servants, and (4) by the carelessness of said servants.    And because said second and third counts charge that the life was lost by the carelessness of said servants, and not by their gross carelessness ; because said counts charge that the life was lost by the combined negligence and carelessness of the corporation, unfitness of its servants, gross negligence of its servants, and carelessness of its servants, which is not the offence made indictable by the statute.    5. Because the several acts alleged as negligence and carelessness in the bill are not in themselves acts of carelessness, or negligence, or·unlawful, and they are not shown to be such by any proper averment or description in the bill.    6. Because there is in the bill no sufficient description or allegation to show by what particular acts of negligence or carelessness, or by what unfitness of servants, the accident occurred.    7. Because said bill does not sufficiently charge any offence indictable under the statute.    8. And also, because, there being simply a general verdict of guilty without any special finding, it does not appear by the verdict, or by any admission on the record, that the deceased left any widow, child, or heirs.

Questions reserved.

*Hatch* and *S. C. Eastman*, for the defendants.

I. The motion to direct a verdict for the defendants ought to have been granted.

1. The same principles of law are applicable to indictments under our statutes as obtain in civil causes.    *State* v. *Grand Trunk Railway Co., &c.*, 58 Me. 176 ; *Commonwealth* v. *Fitchburg R. R. Co.*, 10 Allen 189 ; *Commonwealth* v. *Worcester R. R. Corp.*, 101 Mass. 201.

2. It was incumbent upon the State's counsel to prove that the deceased was exercising due care in attempting to cross the railroad at the time of the accident ; otherwise, this prosecution could not be maintained.    This is undeniably the rule in civil cases.    Thus, in actions for damages sustained by defective highways.    See *Farnum* v. *Concord*, 2 N. H. 392, and numerous highway cases since decided.    And the principle is of general application.    See *Avery* v. *Maxwell*, 4 N. H. 36 ; *May* v. *Princeton*, 11 Met. 442 ; *Wilson* v. *Charlestown*, 8 Allen 137 ; *Mayberry* v. *Concord R. R.*, 47 N. H. 391 ; *Lisbon* v. *Lyman*, 49 N. H. 566.    This doctrine has been frequently applied to actions for damages arising from injuries received upon railroads.    *Lucas* v. *New Bedford & Taunton R. R.*, 6 Gray 64 ; *Gilman* v. *Deerfield*, 15 Gray 577 ; *Gavett* v. *M. & L. R. R. Co.*, 16 Gray 501 ; *Gahagan* v. *B. & L. R. R.*, 1 Allen 186 ; *Todd* v. *Old Colony & Fall River R. R. Co.*, 7 Allen 207 ; *Warren* v. *Fitchburg R. R. Co.*, 8 Allen 230 ; *Butterfield* v. *Western R. R. Corp.*,

10 Allen 532; *Hickey* v. *B. & L. R. R. Co.*, 14 Allen 429; *Mayo* v. *B. & M. R. R.*, 104 Mass. 137; *Button* v. *Hudson R. R. Co.*, 18 N. Y. 248; *Forsyth* v. *B. & A. R. R. Co.*, 103 Mass. 511.

The language of the statute on which this indictment is founded expressly calls for the application of this principle, because it cannot be said that the life of any person has been lost "by reason of the negligence" of any railroad, when his own want of care partly caused or contributed to the accident.

3. No such care was shown by the State on the part of the deceased. To go upon a railroad track without looking to see if a train is coming, is in itself such want of due care and diligence as to be conclusive against the prosecution. *Wilds* v. *Hudson River R. R. Co.*, 24 N. Y. 431; *Grippen* v. *N. Y. Central R. R. Co.*, 40 N. Y. 51; *Stubley* v. *Lon. & N. W. Railway Co.*, Law Rep., 1 Exchq. 13; *No. Penn. R. R. Co.* v. *Heileman*, 49 Pa. St. 60; *Butterfield* v. *Western R. R. Corp.*, 10 Allen 532; *Bancroft* v. *B. & W. R. R. Corp.*, 97 Mass. 275; *Havens* v. *Erie R. R. Co.*, 41 N. Y. 296; *Renwick* v. *N. Y. Central R. R. Co.*, 36 N. Y. 132; *Gonzales* v. *N. Y. & H. R. R. Co.*, 38 N. Y. 440; *Baxter* v. *Troy & Boston R. R. Co.*, 41 N. Y. 502; *Harty* v. *Central R. R.*, 42 N. Y. 468; *Ernst* v. *Hudson R. R. Co.*, 39 N. Y. 61; *Gorton* v. *Erie R. R. Co.*, 45 N. Y. 660.

4. In fact, the State did show affirmatively an entire want of care on the part of the deceased. A reference to the cases already cited will demonstrate a more marked want of care on the part of the deceased, in the present instance, than in most of the cases in which the right of the plaintiff to recover has been for this reason denied. See cases above cited; also, *Steves* v. *O. & S. R. R. Co.*, 18 N. Y. 422. If the deceased relied upon his clock, as may be argued by the prosecution, that fact only strengthens the evidence of his negligence. The clock was half an hour out of the way, and to neglect the use of his own senses, relying on such a time-piece, was the grossest possible negligence. It was negligence to suffer his clock to be in such a condition. It was lawful for the defendants to run trains upon their road at any time of the day; and the deceased would have been guilty of negligence in attempting to cross the road at any time without looking to see if a train was coming.

5. There being no dispute as to the facts, but the case resting upon the evidence presented by the State, the sufficiency of the evidence is a question for the court. The motion is in the nature of a demurrer to the evidence. *Baker's case*, 5 Coke 104; 1 Chitty's Crim. Law 623; *Bailey* v. *Kimball*, 26 N. H. 351; *Palmer* v. *Portsmouth*, 43 N. H. 266;— see, also, cases already cited. *Toomey* v. *London, &c., Railway Co.*, 3 C. B. (N. S.) 146. We think it will be found that in every reported case where the question of negligence has been submitted to the jury, there were questions of fact, the determination of which was necessary before the court could apply the principles of law.

6. Nothing which was proved during the trial tended to alter the case made by the State, so far as related to the care exercised by the deceased.

II. Upon all the whole case there was no sufficient evidence that the life of the deceased was lost by reason of the negligence or carelessness of the defendants, or by the unfitness, or by the gross negligence or gross carelessness, of their servants or agents ; or that the deceased, at the time of the accident, was using ordinary, reasonable, and proper care. Upon these points the verdict was against evidence.

III. 1. The evidence, that the same servants of the defendants, in charge of the locomotive, had passed at other times during the preceding year without sounding the whistle or ringing the bell, was improperly admitted. The only proper question was, whether they were guilty of gross negligence or carelessness at the time of the accident. While it has sometimes been held to be proper to show defects in machines, by showing that the same defects did produce the same results on other occasions—*Boyce* v. *Cheshire R. R.*, 43 N. H. 627—this principle is utterly inapplicable to a free and voluntary agent, possessing full control over his own acts. That a man did or did not do a given act on one occasion, has no tendency to show that he did or did not act in the same manner on another. If it be considered that this is evidence of character in both instances, it is plainly inadmissible. Best on Presumptions of Law and Fact 211 ; Foster's Crown Law 246.

2. If this evidence amounts to anything, it is because it is evidence of the character of the engineer and fireman. But the court excluded similar evidence of the character of the engineer, when offered by the defendants.

IV. The evidence, tending to show the fitness of John Wadleigh for his place as engineer, was improperly excluded. The indictment charges, in the third count, that the life of the deceased was lost by the unfitness of the servants of the defendants. From this claim the State's counsel never formally receded. It is true, they offered no evidence tending to show the unfitness of the engineer, except such as is recited in the case. But this did not exclude or release the defendants from proving affirmatively the fitness of their servant, and their own care in selecting him.

V. We think the charge to the jury erroneous, because,—1. His honor the judge left it to the jury to say whether certain specified acts or omissions would be gross negligence, which would make the defendants liable. As we have stated above, we suppose that what constitutes negligence is a question of law for the court, or in some cases a question of mixed law and fact; but the charge left it to the jury as a question of fact only. 2. The charge is open to the greater objection, that, though his honor charged the jury that the great question in the case was, whether the death was caused by the gross carelessness or negligence of the servants of the defendants, yet he left it to the jury to consider what would be ordinary and proper and suitable care on the part of the agents of the defendants, and what degree of care would be reasonable and proper to be exercised on the occasion in question. Upon the whole, the jury may have been led by the charge to convict the defendants upon the ground that the defendants' ser-

vants did not use ordinary care, though the statute establishes an entirely different rule. The charge authorized the jury to determine what degree of care would be reasonable. The statute makes the defendants responsible only for gross negligence or carelessness. 3. That part of the charge which relates to the question whether the negligence of the servants of the defendants was the more proximate cause of the injury is wholly inapplicable to the facts proved in this case, and must have led the jury to balance the negligence of the parties, and lay the responsibility, according to the preponderance of evidence, upon that party which they thought most to blame. *Button* v. *Hudson R. R. Co.*, 18 N. Y. 257–259.

VI. The instructions asked for by the defendants were proper, and ought to have been given to the jury.

We refer to the cases already cited as to the effect of the negligence of the deceased, and as to the duty of the court to determine as matter of law what constitutes negligence, and for what degree of negligence the defendants are liable.

VII. Judgment ought to be arrested, because,—1. There is no averment that the deceased, at the time of the accident, was in the exercise of due care. It being necessary to prove this fact to entitle the State to a verdict (see cases before cited), the general principles of criminal pleading require that it should be averred in the indictment. 1 Bishop Cr. Law, ch. 19,—and especially see sections 280, 281, 379, 385. The statute must be read as if the words were " If the life of any person, *himself in the exercise of due care,*" &c. ; otherwise (as is elsewhere suggested), it cannot be understood that the life was lost " *by reason* of the negligence, &c., of the railroad." And both the averments in the bill and the evidence must conform to this interpretation. The doctrine in *Commonwealth* v. *Maxwell*, 2 Pick. 139, and *State* v. *McGlynn*, 34 N. H. 426, is applicable. In *Corey* v. *Bath*, 35 N. H. 531, it was held not necessary to aver that the plaintiff was in the exercise of ordinary care ; but the case rests simply upon the authority of *May* v. *Princeton*, 11 Met. 442, in which the reasoning of the court, applied to the present case, leads directly to the opposite conclusion. And both these are civil cases. The rule in criminal pleading is more exact.

2. The indictment is double, for the reasons stated in the motion for arrest of judgment. This is good cause of arrest. *State* v. *Nelson*, 8 N. H. 163 ; *State* v. *Fowler*, 28 N. H. 184 ; *People* v. *Wright*, 9 Wend. 198 ; Davis Criminal Justice, Hurd's ed., 40.

3. The negligence or carelessness of the proprietors of a railroad is something entirely distinct from the unfitness of their servants, and from the gross negligence or carelessness of the servants. The statute evidently intends the gross *carelessness* as well as the gross negligence of the servants ; but the indictment, departing from the statute in the second and third counts, alleges that the accident occurred " by the unfitness and gross negligence, and *by* the carelessness of the agents," &c., of the defendants ; and the first count attributes the acci-

dent to " the negligence and carelessness of their servants aforesaid."
But simple negligence and carelessness of the servants of the defend-
ants are not within the condemnation of the statute.    It is impossible
to say upon which of the charges contained in the indictment the de-
fendants were convicted.    Upon the evidence recited in the case, it is
most probable that they were convicted upon the charge of simple neg-
ligence of their servants, for which no penalty is imposed by the statute.
And in this respect the indictment is fatally defective, because, it being
found by the jury that the accident was occasioned by the simple neg-
ligence or carelessness of their servants, the defendants have been con-
victed, though guilty of no crime.    1 Bish. Crim. Procedure, sec. 271;
3 Bacon Abr. 556, 557.

4. The several acts alleged in the bill are not in themselves acts of
negligence or carelessness, and are not shown to be so by any proper
averment in the bill.

We apprehend that, by the general principles of criminal pleading,
the indictment ought to set forth either acts of defendants in them-
selves unlawful, or to describe distinctly acts of omission which caused
the disaster.    The real difficulty of doing so in the present instance is,
that the gross carelessness of the deceased was the real cause of the
disaster, as fully appears from the facts recited in the case.

VIII. The statute directs that the fine imposed, in cases like the
present, shall go to the widow, children, or heirs-at-law of the deceased.
In *State* v. *Gilmore*, 24 N. H. 469, it was held that the fact, that the de-
ceased left a widow, child, or relatives to take the fine, is an essential
averment.    It is evident that if the deceased left no heirs, the indict-
ment could not be maintained.    *Commonwealth* v. *B. & W. R. R. Corp.*, 11
Cush. 518 ; *Commonwealth* v. *Eastern R. R. Co.*, 5 Gray 473.    But if it be
necessary to allege, it is also necessary to prove, the fact that the de-
ceased left heirs.    The verdict fails to affirm this essential averment
of the bill.    *Locke* v. *State*, 32 N. H. 106.

*Marston* and *Frink*, for the State.

I. (1) The State maintains that the court was in error in holding
that any contributory negligence on the part of the deceased could in
any way discharge these defendants of their liability under the statute
of our State.    Our statute is exceptional.    So far as we have been able
to examine the statutes of other States, it has been enacted in express
terms that a party in fault, shall take no benefit from the law.    The
very fact that our legislature, with the language of these acts before
them, have chosen to omit all words of limitation, in our view ought
to give an interpretation to our statute.    The same rule of construc-
tion manifestly ought not to obtain in criminal as in civil cases.

Any construction which would excuse the defendants from the con-
sequence of their crime, because some other party was in fault, would
be opposed to all the principles of the criminal law.

No invitation to commit a crime can acquit its author.    The law

substantially requires that railroads should use care and diligence in their management, and for the want of its use, if resulting in the death of a person, punishes them. The only test of their guilt or their innocence should be, Would the deceased have come to his death in the manner he did, if the railroad had been in the exercise of legal care and prudence? (2) But if the court should not adopt this view of the case, then the question of care, when the facts are disputed and not conclusively proved, is one of fact and not of law. *Havens* v. *Erie Railroad Co.*, 53 Barb. 341; *Wakefield* v. *Conn. River R. R. Co.*, 37 Vt. 336; *Eagan* v. *Fitchburg Railroad Co.*, 101 Mass. 317; *Mayo* v. *Boston & Maine R. R.*, 104 Mass. 142; *Carlton* v. *Bath*, 22 N. H. 559; *Palmer* v. *Portsmouth*, 43 N. H. 265. In the language of Judge JOHNSON, in *Ireland* v. *Oswego, &c. Railroad Co.*, 3 Kernan 533, "The fact of negligence is very seldom established by such direct and positive evidence that it can be taken from the consideration of the jury and pronounced upon as a matter of law." And especially has it been the tendency of our courts to submit these questions to the jury. In the case at bar, the deceased had other evidence, satisfactory to him at the time, that it was safe for him to proceed, derived from his supposed knowledge of the time of day, and he was not bound, as a matter of law, to look up or down the track. Shearman and Redf. on Negligence 568; *Ernst* v. *Hudson River Railroad Co.*, 35 N. Y. 36. Nor could the court say he was guilty of negligence in not looking for the approach of the train, there being evidence that the customary signals were omitted by the defendants. *Brown* v. *New York Central R. R.*, 32 N. Y. 603; *McGrath* v. *Hudson River R. R. Co.*, 32 Barb. 144. And the jury had the right to consider the obstructions to a full view of the track, and other circumstances of excuse which appeared in the testimony. In all the cases where the rule of contributory negligence is admitted with the utmost rigor, it admits of this important exception, that he who enters upon the track without looking for an approaching train, may show any reasonable excuse for his conduct. In short, the rule is, that the degree of care which a prudent man should use depends upon the time and circumstances of his approach. *Wheelock* v. *Boston & Albany R. R. Co.*, 105 Mass. 204; *Warren* v. *Fitchburg R. R. Co.*, 8 Allen 230; *Gaynor* v. *Old Colony & Newport R. R. Co.*, 100 Mass. 213; *Ernst* v. *Hudson River Railroad Co.*, 35 N. Y. 36.

As says Judge PECKHAM, in *McGrath* v. *Hudson River R. R. Co.*, 32 Barb. 151, "Any other rule would afford no practical protection to the public, but would give encouragement and impunity to negligence by railroad companies." The State, therefore, presented excuses for Mr. Woodbury's not looking for the train. Whether these were true or pretended excuses was a question for the jury, upon which they have passed; and there is nothing in the charge to the jury, or in the denial for instructions, inconsistent with this position. The court did not hold that to go upon a railroad track without looking to see if a train is coming, when entirely unexcused, is not of itself want of due care and prudence, " but that it was for the jury to say what degree of

care would be a reasonable amount of care to be required of a man of ordinary capacity in crossing *at the time and under the circumstances under which the deceased undertook to cross.*" The State having explained or excused in any degree the omission of the deceased to look, upon his approaching the track, the court could *but* refuse the request of the defendants; and the instructions to the jury are in the exact terms of the books. *Warren* v. *Fitchburg R. R. Co.*, 8 Allen 230; *Ernst* v. *Hudson R. R. Co.*, *ante*.

II. The second objection of the defendants is but a restatement of the first in a more compact shape.

III. The evidence of the conduct of the servants of the defendants, in passing the highway at other times without sounding the whistle or ringing the bell, was admissible under the limitations imposed by the court. The court restricted the testimony to the same servants, and within a reasonable time. *Boyce* v. *Cheshire R. R.*, 43 N. H. 627; *Chamberlain* v. *Enfield*, 43 N. H. 356; *Hill* v. *Portland & Rochester R. R. Co.*, 55 Me. 444. This rule has been holden to apply to the proof of previous intoxication in a servant of a railroad. *Warner* v. *N. Y. C. R. R. Co.*, 45 Barb. 299. This is not evidence of character, as suggested in the defendants' brief. It does not follow, as a matter of course, that the defendants were negligent or careless because they ran their cars across this track, at this or any other time, without giving these signals. That was a question of fact, and was submitted as such to the jury. As affording, however, a reasonable presumption as to their conduct on this occasion, no circumstantial evidence could be more satisfactory.

IV. There is no better established rule of law, than that one cannot show the general character of a party whose conduct, upon a particular occasion, is drawn in question. The case of *Commonwealth* v. *Worcester*, 3 Pick. 473, seems to be directly in point. The issue was, whether the engineer had conducted himself properly on this occasion; and if the State proved his misconduct at this time, it might be some evidence of his unfitness, and this allegation of the indictment could not be formally waived. It is conceded, however, by the defendants, that the State made no claim of his general unfitness, and, certainly, until they did so, it was not open to the defendants to meet it with that sort of proof.

V. (1) We certainly fail to discover that the defendants had any cause of complaint, derived from the charge to the jury upon the question of the degree of negligence necessary to convict the defendants. The court instructed the jury, in as plain terms as our language admits of, that the question for them to determine was, whether the servants or agents of the road were guilty of *gross* negligence. It was necessary for the court to illustrate the case by reference to the different degrees of care, but his honor very carefully guarded against misdirection to the jury by frequently stating to them the fact in issue, as involving the question of the *gross* carelessness or negligence of the defendants' servants. (2) The counsel for the defendants misrepresent that part of the judge's charge in which he uses the term "proximate

cause," by omitting the very plain definition or explanation which he gave of these terms. His charge in this behalf was in accordance with a large class of cases, the doctrine of which has never been questioned. We cannot better state the rule than by adopting substantially the language of the presiding justice,—"That if the person killed or injured, carelessly, without the exercise of due care, comes upon the defendants' track, still, if the defendants' agents, after they see his danger, might avoid the fatal result by the exercise of proper care, and, through their gross negligence, drive upon him, then the defendants are liable. Shearman & Redfield on Negligence 493, and cases there cited; *Button* v. *Hud. R. R. R. Co.*, 18 N. Y. 258. No terms could be more apposite in discussing this doctrine of law than those used, "proximate cause," for it is the gross negligence of the defendants which immediately produced the fatal result. How the jury could in any way be led to balance the negligence of the parties from such plain and unequivocal instructions, or how it ever entered the heads of the learned counsel to suggest such an idea, we are utterly at a loss to comprehend.

VI. The sixth objection in the plaintiff's brief contains nothing new, excepting a complaint that some instruction prayed for in regard to the maintenance of gates at this crossing was denied. What they asked for does not appear from the case or in their brief; but it must have been very properly denied, upon the authority of *Linfield* v. *Old, Col. R. R. Corp.*, 10 Cush. 569.

VII. (1) If the view of the State is correct, that the negligence of the deceased does not excuse the defendants, then it was not necessary to aver or prove the care of the deceased. But whether this view is sustained or not, the indictment in this respect is sufficient. The rule as to pleading in civil and criminal cases in this respect must be the same, excepting that the one process may be amended more readily than the other; and if so, the case of *Corey* v. *Bath*, 35 N. H. 531, is decisive of this question. In *May* v. *Princeton*, 11 Met. 442, the court employed the same argument to show that it was not necessary to *aver* the exercise of care, that the counsel for the defendants used at the trial to show that it was incumbent on the State to *prove* the care of the deceased; and that is, that if the want of care of the deceased contributed to the calamity, then it cannot be said to have happened by reason of the negligence of the defendants. This reasoning, if false, compels the defendants to fall back upon our original position,—that the doctrine of contributory negligence has no application to this case. If true, it leads to the conclusion that it is not necessary to aver, in set terms, care, because, in the allegation that the death of the deceased was caused by the defendants' negligence, we do aver that his want of care in no wise contributed to it.

(2) The indictment charges the offence in the words of the statute.

(3) The courts of our State seem to have determined twice, without any reference to authorities or without any consideration of the principle of the law, that duplicity is a good cause of arrest of judgment. We imagine there will be no occasion for reconsideration of these cases

in this indictment; but, if there was, we should ask with great confidence that the doctrine of *State* v. *Nelson* and *State* v. *Fowler* should be overruled. See 1 Bish. Crim. Procedure, sec. 196 ; *State* v. *Miller*, 24 Conn. 522, 530 ; Wharton Crim. Law (3d ed.) 194 ; *State* v. *Brown*, 8 Humph. 89, 92 ; Archbold's Cr. Law 55, 56 ; *Commonwealth* v. *Tuck*, 20 Pick. 361.

But the indictment under consideration is not double. It follows the general rule of charging conjunctively in one count several offences recited in one statute in the alternative. 1 Bish. on Crim. Procedure, sec. 191. If there is any objection to the first count because it does not charge gross negligence, it is cured by the verdict founded upon the good counts. Upon reading the indictment, it will appear that there are other acts of negligence and carelessness set forth than those mentioned in the defendants' brief; but the rate of speed, whether regulated by law or not, and the maintenance of gates and signal notices, and the stationing of guards and watchmen, are all questions of fact proper to be submitted to the jury as proving or disproving the defendants' guilt, and hence proper to be alleged in the indictment. It is not necessary to recite in the indictment the acts of negligence or carelessness, &c., which caused the death. *Corey* v. *Bath*, 35 N. H. 531–543 ; *Perkins* v. *Conn. R. R.*, 44 N. H. 225.

VIII. The indictment could not have been sustained if we had not charged and proved that the deceased left heirs. It was as necessary that we should establish this fact as that we should prove that such a person as the deceased had once lived ; and the jury could be asked to find the one fact specially in their verdict with just as much propriety as the other. The general verdict of "guilty" establishes *the fact* that we have proved all that was necessary to make out the State's case.

*Hatch* and *Eastman*, in reply.

1. If our statute is "exceptional," as alleged by the learned counsel for the State, the question arises whether it is so in language only, or in meaning. The reason of the law is not peculiar to New Hampshire, but justly applicable, in the sense for which we contend, to railroads in all States. If construed as the State's counsel claim, railroads in New Hampshire alone would be liable to pay money to the widow and heirs of any person to whose death their negligence, &c., contributed in the slightest degree ; and this, although the deceased came to his end mainly by his own carelessness, folly, or crime. If it were necessary, some construction should be diligently sought for, which would save our legislation from such a reproach. To us, that construction seems sufficiently obvious in the fact that the life of any person cannot be said to have been lost by reason of the negligence, &c., of a railroad, when his own negligence partly caused the misfortune. The legislature acted in full view of the existing law between individuals and railroads, and intended merely to extend the remedy to the case of a person who is not merely injured but killed. Maine, in 1821

(Laws of 1821, ch. 118, sec. 17), imposed a fine upon towns, to be recovered by indictment, for the use of the family of any person killed by reason of a defective highway. The provision is preceded, in the same section, by one giving an action to a person injured but not killed. See Rev. Stat. of Maine of 1857, ch. 18, sec. 61. In neither case is it provided that the person injured shall be in the exercise of due care. The supreme court of Maine, however, held this essential in the case of a person injured only—*Crumpton* v. *Solon*, 11 Me. 335; and they allude to the other provision in the carefully considered case cited in our former brief. 58 Me. 176.

The same thing is observable in our own statute, giving damages to persons injured by defective highways. Laws of 1830, p. 580; Rev. Stat., ch. 27, sec. 1; Gen. Stat., ch. 69, sec. 1. Yet it is well settled that proof of due care on his part is necessary to entitled a party to recover under this statute. That the statute is really remedial and not criminal, is plain from the fact that the fine is given to the widow and heirs of the person killed, and is not to be imposed at all unless there are such parties to receive it. The " principles of the criminal law " do not regard compensation to the party injured, but leave him to his action. " Any construction which would " charge the defendants with the consequences of the negligence of the deceased would be contrary to the principles of natural justice.

2. Upon a motion for nonsuit the facts are not in dispute, and we so put the question in this case. The State's counsel are, upon their own showing, not entitled to a verdict. It is absurd to say that every case must go to the jury, where there is any " pretence " of due care on the part of the prosecution. Such a rule would send every case to the jury ; for it does not require much ability in counsel or client " to present excuses," and still less to " pretend " them. In the present case, the " pretended " excuses were insufficient. In addition to the numerous cases we have cited on this point, we respectfully call the attention of the court to some which have been published since this case was tried. Thus, in Massachusetts: *Allyn* v. *Boston & Albany R. R. Co.*, 105 Mass. 77 ;—and in New York, we quote from the Albany Law Journal :

" The plaintiff, crossing a street in Elmira with a wagon, driving at a trot, was struck by one of the defendants' trains, which was going at its usual speed of fifteen miles an hour. It was night, and the head lamp of the locomotive was burning. The situation of the ground was such that the plaintiff could have seen the light if he had looked. He swore that he looked, and did not see it. He was hard of hearing. Held, that he was chargeable with contributory neglect." *Rupertsberger* v. *Northern Central R. R.*, Albany Law Journal, No. 11, p. 172, March, 1873. " Several witnesses testified they did not hear the bell ; others swore positively that they did hear it. Held, that there was no evidence of the defendants' negligence to go to the jury." *Grippen* v. *N. Y. C. R. R.*, 11 Albany Law Journal 172; *Steves* v. *O. & S. R. R.*, 18 N. Y. 426. "A woman started from a store, and attempted to

cross a street on the defendants' track. There was nothing to obstruct her view of the defendants' cars till she was struck and killed. The cars were moving slowly. Held, that if she looked she must have seen the train, and was negligent in attempting to cross, and if she did not look, she was negligent." *McGinnis* v. *N. Y. C. & H. R. R. Co.,* 11 Albany Law Journal 172.

3. As to the evidence of the conduct of the servants of the defendants in crossing this highway at other times, we respectfully assert that our position is sound. The cases cited by the State's counsel are those of defects in a machine, vicious habits in a horse, and the effect of a certain noise upon a horse, none of which compares with acts of human intellect. The case cited by them upon the next point—*Com.* v. *Worcester,* 3 Pick. 373—seems to us direct authority here.

4. If, as counsel allege, "it is unnecessary to recite in the indictment the act of negligence, &c., which caused death," this indictment is argumentative, and full of false arguments calculated to mislead the jury. 1 Chitty Pl. 236, 539; 1 Chitty Cr. Law 172.

SARGENT, C. J. Our statute, under which this indictment is found, is as follows—Gen. Stats., ch. 264, sec. 14: "If the life of any person not in their employment shall be lost by reason of the negligence or carelessness of the proprietors of any railroad, or by the unfitness or gross negligence or carelessness of their servants or agents, in this State, such proprietors shall be fined not exceeding five thousand dollars nor less than five hundred dollars, and one half such fine shall go to the widow and the other half to the children of the deceased. If there is no child, the whole shall go to the widow; and if no widow, to his heirs according to the law regulating the distribution of intestate estates."

Another provision of the statute, upon which this indictment seems to be based, is contained in sec. 4, ch. 148, Gen. Stats.: "No proprietors of a railroad shall run their engine, cars, or train at a greater speed than six miles an hour across any highway, or near the compact part of any town."

Some of the general allegations in the indictment are, that, in the town of Salem, there is a certain public highway, which is properly described; that the track of the defendants' railroad crosses said highway at a place called Ballard's crossing, in said Salem, upon the grade or level of said highway; that, on December 17, 1870, the defendants were proprietors of said railroad, and by their servants and agents, ran a locomotive steam engine and a train of cars upon said railroad and across said public highway; that Benjamin Woodbury, of said Salem, not being in the employment of said railroad, was then passing along said public highway, at the crossing aforesaid, when the defendants, with said engine and train, suddenly surprised, overtook, struck, threw down, and instantly killed the said Woodbury. These facts are recapitulated in each count, with some modification; and each count states that one Gordon is the administrator of said Woodbury's estate, and

states that he left a widow and children, who survive him, giving the names of each.

The first and second counts also charge that said engine and train, at the time of crossing said highway, were running at a greater speed than six miles per hour, to wit, at the speed of twenty-five miles per hour; and the third count charges that they were running at great speed and violence,—the first and third charging that this was done negligently and carelessly, and the second that it was also done unlawfully.

But, however carelessly or negligently it may have been done, it was not unlawful, because sec. 4 of ch. 148, Gen. Stats., had, before the finding of this bill, been amended by the Laws of 1868, ch. 1, sec. 42, by inserting the word *in* before the words "or near," so that the prohibition was against running at a greater speed than six miles an hour " across any highway in or near the compact part of any town." It is not alleged or shown that this highway at the crossing was in or near the compact part of any town. There was nothing, therefore, to show that this running was unlawful, although it may have been done with the utmost degree of negligence and carelessness, which must depend upon the circumstances as proved at the trial. We shall have occasion to refer to these several counts again in the course of the opinion.

The first question that arises is, whether this indictment is to be treated like a civil or a criminal proceeding. Is it intended to punish the corporation for committing a murder, as an individual would be punished for a crime? or, is it only intended to make the company liable in damages to the family and heirs of the deceased for the injury done to them in depriving them of one upon whom they leaned for support and guidance?

At common law, no value is ever put upon human life, to be recovered by way of damages in an action. *Nickerson* v. *Harriman*, 38 Me. 279; *State* v. *Railway*, 58 Me. 176. It has generally been supposed to be a well established principle of the common law, that a party is not liable, *civiliter*, for the destruction of human life by any person, whether the act which caused the death were felonious or not. *Wyatt* v. *Williams*, 43 N. H. 102, and cases on pages 105 and 106; 2 Redf. on Railways (5th ed.) 267, 268;—but see dissenting opinion of BRAMWELL, B., in *Osborn* v. *Gillett*, L. R. 8 Exchq. 88. It was for the purpose of obviating this supposed defect in the common law, and removing the supposed objection to such recovery, that our statute was made, providing for the payment of a sum of money for the loss of life, to be recovered for the benefit of the widow, children, or heirs.

A similar statute had been made in England; and in most of our States similar legislation has followed. In some jurisdictions a civil suit has been authorized, and in others a proceeding criminal in form like ours has been adopted, but all with the same object. In Maine, the remedy is by indictment, the same as here; and it is held, in *State* v. *Railway*, 58 Me. 176, 181, that " the whole object of these provisions was to obviate the common law doctrine in reference to human

life, before stated, and to enable the heirs or family of the deceased to recover, for their own use, damages to a certain extent for the loss of life. It was not the intention of the legislature to do more than to do away, to this extent, with the rule that all claim for damages must stop at the grave.  *  *  *  It was thought just and expedient to hold those corporations and carriers liable, when death results from their wrong or neglect."

It was also held, that the same rules of evidence and the same principles of law should be applied in such cases where the form is criminal, as in like cases where the redress is sought by a civil action for damages.

In Massachusetts, Maine, New Hampshire, Connecticut, and Rhode Island, the remedy is by indictment. In Maryland, the action must be brought in the name of the State, but is in form civil, and is for the benefit of the person entitled to damages. In most of the other States, as well as in England, the statutes authorize a civil action for damages in behalf of widow, child, or heir. But in all these different forms of proceeding the same end is to be attained, and substantially the same rules are to be applied as though they were civil actions for damages. See Shearman & Redfield on Negligence (2d ed.), ch. 17, and authorities and notes; 2 Red. on Railways (5th ed.) 267, and *seq.*;—see, also, remarks of PERLEY and BARTLETT, *arguendo*, in *B. C. & M. Railroad* v. *The State*, 32 N. H. 223, and of BELL, J., in the opinion 225, 226.

The first question raised by the case is as to the admissibility of the testimony as to the same train, run by the same engineer and fireman, having sometimes passed the same crossing where the accident happened, during the preceding year, without sounding the whistle or ringing the bell, as tending to show that the same men would be more likely to have neglected the performance of these duties upon the occasion in question. The regulations required that upon each occasion when this crossing was passed the bell should be rung and the whistle sounded. There was direct evidence on one side that neither of these signals was given upon the occasion of the accident, while there was just as direct evidence upon the other side that both these signals were properly given. Here was a direct conflict in the evidence. Which shall the jury believe ? Had this duty been invariably performed according to requirement, or had these servants of the road grown careless and negligent in regard to it ? Would their conduct on former occasions have any bearing upon the probabilities of the case ? Would they be more likely to neglect their duty on this occasion if they had frequently neglected it before, and with impunity, than they would if they had always scrupulously observed it ?

Negligence is said to consist in the omitting to do something that a reasonable man would do, or the doing something that a reasonable man would not do, in either case causing, *unintentionally*, mischief to a third party. 1 Hilliard on Torts (2d ed.) 131. It would seem to be axiomatic, that a man is more likely to do or not to do a thing, or

to do it or not to do it in a particular way, as he is in the habit of doing or not doing it. But this must be understood of acts which are done, or omitted to be done, without any particular intent or purpose to injure any one. It cannot apply to acts that are done intentionally, wilfully, or maliciously, because such acts are done with a specific object in view, and they are performed, not by force of habit, but with a definite purpose. It would not be competent evidence that a man was guilty of murder, to show that he had committed several other murders before; and so of any other crime, or any wilful trespass, or any act done and intended for the specified object in question.

If, in this case, it had been charged that these agents of the corporation had knowingly, intentionally, wilfully, or maliciously done or omitted to do any act for the purpose of injuring the deceased or any body else, then the only questions would be, Was the act done, or omitted, as charged? and did the knowledge, the intention, the will, or the malice, exist when the act was done or omitted? But when the question is, Did these servants of the road, without any intention whatever, and through mere negligence or carelessness, omit to give these signals on that occasion? we think the inquiry was properly made as to what they had done before in that regard, and whether they had or had not grown habitually negligent of the requirements of the road in that particular. In this view of the case, we think the evidence was admissible, not as evidence of character, not as evidence of fitness or unfitness, but simply as having some tendency to show that on this particular occasion these agents were more propably negligent and careless, because they had before frequently neglected the same duty with impunity, and had thus become habitually negligent in that regard. This exception is overruled.

The evidence offered, to show the fitness of Wadleigh for the place he held, was properly rejected, for the reason stated, that the State made no claim that the defendants were liable by reason of the unfitness of this or any other servant of the road. This charge in the indictment was to be proved affirmatively; but here was not only no proof, but no claim upon that ground. There was no occasion for the evidence offered. The State may abandon any charge contained in the indictment, or any count contained therein, and proceed upon the residue; and the court would see that, after a claim had once been abandoned in that way, it was not again revived or in any way relied on by the State without at least giving the defendant a full opportunity to meet and answer it.

When the plaintiff had rested, the defendants moved the court to order a verdict for the defendants for four distinct reasons stated in the case, which reasons contain a statement of various circumstances, which might weigh more or less with the jury, according as they might or might not be modified by other facts and circumstances; and this motion was properly overruled, and, so far as the case shows, no exception was taken to that ruling. But that fact is probably immaterial, as the same questions are raised upon other parts of the case.

The defendants then introduced their testimony. Instructions were given to the jury by the court, and a verdict of guilty was returned, which the defendants moved to set aside for supposed error in the rulings of the court, and, also, as being against the evidence, and unsupported by evidence, upon certain specified points. Let us first consider the questions raised by the rulings of the court; and, for convenience in their examination and discussion, we will change the order in which we find them stated in the case, and arrange them as follows:

1. The jury were instructed " that, if the want of ordinary care on the part of Mr. Woodbury proximately contributed to his death, there can be no recovery here, even if the railroad or their agents were in fault, and were guilty of negligence."

2. The jury were also instructed " that, if the deceased was negligent in crossing at this particular time, still the defendants might be convicted..if it appeared that the negligence of the servants of the defendants was the more proximate cause of the injury ; and that, should they find, upon the evidence in the case, that, although Benjamin Woodbury carelessly, without the exercise of due care, came upon the track, still, if the defendants' servants, after they saw his danger, might have avoided the fatal result by the exercise of proper care, and through their gross negligence drove upon him, they would be liable."

3. The court also instructed the jury " that the great question in the case was, whether Mr. Woodbury came to his death on the day named by reason of the gross carelessness or negligence of the servants or agents of the * * * railroad."

4. " That gross negligence is the want of slight care."

5. " That they were to consider what would be ordinary and proper and suitable care on the part of the agents of the corporation in charge of this train ; that all the circumstances appearing in the case were to be considered by them, as bearing upon the degree of care which would be reasonable and proper to be exercised on the occasion ;" that ordinary care would be " such care as men of ordinary capacity would exercise under these circumstances ;" that the degree of care which would be reasonable in one position or on one occasion, would be quite inadequate on another occasion ; that it must be measured by the circumstances under which the act is done ; that the degree of care which would be reasonable and proper in controlling the powerful element steam, and in the management of such a dangerous instrument as a locomotive, would be very different from the degree of care that would be reasonable and proper in driving a team of horses and wagon upon the highway ; that it was for the jury to say whether the omission of the engineer to sound the whistle at the whistling-post would be gross negligence on his part, that would make the company liable for the death of the deceased provided his death was the consequence of that neglect ; that it was for them to say what degree of care would be a reasonable amount of care to be required of a man of ordinary capacity, in crossing the railroad track at the time and under the circumstances at which the deceased undertook to cross ;

\* \* \* that the care and diligence and circumspection to be required of Mr. Woodbury on this occasion are to be measured by the circumstances in which he was placed, in the same way as the care and diligence required of the servants of the corporation are to be measured by the circumstances under which they were placed ; that they were to consider all the circumstances,—whether the crossing of the track was dangerous, and whether ordinary care would require that a man should look for the approach of a train.

The first two instructions raise the question of *proximate* and *remote* causes, which has been much discussed in many jurisdictions, though but little in New Hampshire. They attempt to apply in a measure the maxim, *In jure non remota causa, sed proxima, spectatur*, which, though not to be found in Broom's Legal Maxims, nor in the civil law, is said to have originated with Aristotle, and to have descended through the schoolmen to Lord Bacon, and is classed as one of Bacon's " maxims of the law." See 4 Am. Law Review 201. But as Aristotle and the schoolmen were philosophers and logicians rather than lawyers, and as Lord Bacon was a philosopher and logician as well as a lawyer, it may be doubtful whether this maxim should be classed as a legal or a philosophical maxim. The *proxima causa* was evidently originally substantially the same as the *causa causans*, or the cause necessarily producing the result. 4 Am. Law Rev. 204. But the practical construction of " proximate cause " by the courts has now come to be the cause which naturally led to, and which might have been expected to be directly instrumental in producing, the result. *Marble* v. *Worcester*, 4 Gray 395, 410, and *seq.; Bennett* v. *Lockwood*, 20 Wend. 223 ; *McGrew* v. *Stone*, 53 Pa. St. 436 ; Shear. & Redf. on Negligence, secs. 9, 10, 33, 403, 594, 596.

We have seen that this proceeding, though in the name of the State, is substantially a civil proceeding to recover damages, and is to be governed by the same rules, as far as practicable, that govern and are applicable to civil actions. And it is well settled in this State, as elsewhere, as a general rule, that in ordinary cases of negligence the plaintiff cannot recover if his own fault contributed to produce the injury complained of. See the authorities cited on this point in the defendants' brief. That rule would apply, no doubt, to this case, just as to any other civil proceeding.

But this rule has some marked exceptions. In 1 Hilliard on Torts (2d ed.), ch. 4 is devoted to the general subject of actions by plaintiffs who are guilty of wrong or negligence, or *in pari delicto ;* and, after illustrating the general doctrine fully, he says, page 159, sec. 17,—" The general principle, however, above stated and illustrated, that one party cannot recover damages from another when both are in fault, or *in pari delicto*, is subject to many qualifications and exceptions; " and after stating many exceptional cases, he arrives at the following general conclusions,—pp. 160, 161,—that the general rule, *in pari delicto*, is held subject to the following qualifications :

1. The injured party, although in fault to some extent, may be

entitled to damages for an injury which could not have been avoided by ordinary care on his part.

2. When the negligence of the defendant is the proximate cause of the injury, but that of the plaintiff only remote.

3. Where a party has in his custody or control dangerous implements or means of injury, and negligently uses them or places them in a situation unsafe to others, and another person, although at the time even in the commission of a trespass or otherwise somewhat in the wrong, sustains an injury.

4. And when the plaintiff, in the ordinary exercise of his own rights, allows his property (or himself) to be in an exposed and hazardous position, and it becomes injured by the neglect of ordinary care and caution on the part of the defendant, he is entitled to reparation, for the reason that, although he thus took upon himself the risk of loss or injury by mere accident  *  *  *  he did not voluntarily incur the risk of injury by the negligence of another.

" More especially," he adds (p. 161), " the general rule, *in pari delicto*, is held not strictly applicable where the responsibility of the defendant is, by the policy of the law, made more rigid than that of the plaintiff, the parties in such case not being considered as equally in fault;" and cites the case of *Reeves* v. *Railroad Co.*, 30 Pa. St. 454, where the servants of the railroad drove a train towards a grade crossing, round a curve and through a cut, at great speed, and injured the plaintiff, who was crossing in the highway ; and held, that the traveller was not guilty of negligence in not anticipating and providing for such action, nor, in crossing a railroad at such a point, is he bound to give a signal to an approaching train.  The doctrine thus stated by Hilliard is substantially the same as that laid down in *Kerwhaker* v. *C. C. & C. Railroad Co.*, 3 Ohio St. 172, which is a leading and well considered case.

But it is said, in Shearman & Redfield on Negligence (secs. 25 and 26), that the precise doctrine of law upon this subject, which is supported by the weight of authority in England and America, is, that " one who is injured by the mere negligence of another cannot recover at law or in equity any compensation for his injury, if he, by his own or his agents' ordinary negligence or wilful wrong, proximately contributed to produce the injury of which he complains, so that, but for his concurring and coöperating fault, the injury would not have happened to him, except where the more proximate cause of the injury is the omission of the other party, after becoming aware of the danger to which the former party is exposed, to use a proper degree of care to avoid injuring him."

The English cases which hold to this doctrine are *Davies* v. *Mann*, 10 Mees. & Wels. 545, in which ERSKINE, J., told the jury that, though the act of the plaintiff, in leaving his donkey in the highway so fettered as to prevent his getting out of the way of carriages travelling along the way, might be illegal, still, if the proximate cause of the injury was the want of proper conduct on the part of the driver of the wagon, the·

action was maintainable against the defendant; and he instructed them, if they thought the accident might have been avoided by the exercise of ordinary care on the part of the driver, to find for the plaintiff.  In the Exchequer, where this case was reviewed, Lord ABINGER, C. B., said, even if this ass was a trespasser, and "the defendant might, by proper care, have avoided injuring the animal, and did not, he is liable for the consequences of his negligence, though the animal may have been improperly there."  And PARKE, B., said,—"Although the ass may have been wrongfully there, still, the defendant was bound to go along the road at such a pace as would be likely to prevent mischief. Were this not so, a man might justify the driving over goods left on the public highway, or even over a man lying asleep there, or the purposely running against a carriage going on the wrong side of the road."  And see *Lynch* v. *Nurdin*, 1 Ad. & Ell. (N. S.) 29, and *Mayor, &c., of Colchester* v. *Brooke*, 7 Ad. & Ell. (N. S.) 339, 377, where Lord DENMAN, C. J., said,—"As a general rule of law, every one, in the conduct of that which may be harmful to others if misconducted, is bound to the use of due care and skill; and the wrong-doer is not without the pale of the law for this purpose."

So, in *Tuff* v. *Warman*, 2 C. B. (N. S.) 740, and S. C., 5 C. B. (N. S.) 573, it is held that mere negligence, or want of ordinary care or caution, will not disentitle the plaintiff to recover, unless it be such that but for that negligence, or want of ordinary care and caution, the misfortune could not have happened; nor, if the defendant might, by the exercise of ordinary care on his part, have avoided the consequences of the neglect or carelessness of the plaintiff.  And it is there said that this principle is deducible from the opinion of the judges in *Butterfield* v. *Forrester*, 11 East 60; *Bridge* v. *Railway Co.*, 3 Mees. & Wels. 246; *Davies* v. *Mann*, 10 Mees. & Wels. 548; *Dowell* v. *Navigation Company*, 5 Ellis & B. 206;—and see *Dimes* v. *Petley*, 15 Q. B. 276.

So, in *Scott* v. *Dublin & Wicklow R. Co.*, 11 Irish Com. Law 377, it was held that the plaintiff cannot recover unless the injury was caused by the negligence of the defendant, nor even then, if he has so far contributed to the accident, by want of ordinary care, that but for that the accident would not have happened; but, strictly, even in that case, the plaintiff is not precluded from a recovery if the defendant might, by ordinary care, have avoided the consequences of the plaintiff's neglect. This is said by Judge REDFIELD, in his Law of Railways (5th ed.), vol. 2, p. 256 (\*236), to be a full and correct statement of the law deducible from the cases.

This doctrine has been held to be law, though not perhaps to the full extent, in Massachusetts, in *Spofford* v. *Harlow*, 3 Allen 176, where it is said, by CHAPMAN, J., that a party may be acting in violation of some particular statute, and still be under the general protection of the law. A third person has no right, merely because he is thus in fault, to run into him and injure him carelessly and recklessly; and see *Parker* v. *Adams*, 12 Met. 415, 419; *Lovett* v. *Railroad Co.*, 9 Allen 557, 562; *Welch* v. *Wesson*, 6 Gray 505; *Fisk* v. *Wait*, 104 Mass. 71; *Kearns* v. *Sowden*,

*id.* 63, note ; *Steele* v. *Burkhardt*, *id.* 59 ; and, also, to a certain extent in New Hampshire, in *Norris* v. *Litchfield*, 35 N. H. 271, where it is held that " the fact that the plaintiff is a trespasser or violator of the law does not of itself discharge another from the observance of due and proper care towards him ; neither will it necessarily preclude him from a recovery against a party guilty of negligence" ;—and see *Corey* v. *Bath*, 35 N. H. 530; and *Gale* v. *Lisbon*, 52 N. H. 174.

In Connecticut, it is held that the negligence of a party, which precludes his right to recover for an injury suffered through the negligence of another, must be a direct and actual, and not merely a constructive, wrong ; and this wrong must be the proximate cause of the injury, and not merely the remote and incidental cause of it. *Isbell* v. *Railroad Company*, 27 Conn. 393 ; 2 Redf. on Railways 255 (\*235). This is a leading and well considered case.

It is said. on page 404, ELLSWORTH, J., delivering the opinion, that " a remote fault in one party does not, of course, dispense with care in the other. It may even make it more necessary and important, if thereby a calamitous injury can be avoided, or an unavoidable calamity essentially mitigated. Common justice and common humanity, to say nothing of law, demand this. And it is no answer for the neglect of it, to say that the complainant was first in the wrong, since inattention and accidents are to a greater or less extent incident to human affairs. Preventive remedies must therefore always be proportioned to the case in its peculiar circumstances—to the imminency of the danger, the evil to be avoided, and the means at hand of avoiding it."

And again : "An intoxicated man is lying in the travelled part of the highway, helpless, if not unconscious : must I not use care to avoid him ? May I say that he has no right to encumber the highway, and therefore carelessly continue my progress regardless of consequences ? \* \* \* or, if the intoxicated man has entered a private lane or by-way, and will be run over if the owner does not stop his team which is passing through it, must he not stop it ?" ·

And again, page 405 : " Let us suppose, in this case, that, instead of the plaintiff's cattle, the plaintiff himself had been on the railroad track, and that he was too deaf to hear the noise of the train or the ordinary alarm given in such a case : this would certainly have been most culpable and inexcusable conduct on his part, but would it have absolved the defendants from the duty to exercise reasonable care if they saw the plaintiff, or with proper attention might have seen him ? Ought they not in that case to check the speed of the train ? May they run over him merely because he is on the track ? They may well suppose that he is deaf, or blind, or insane, or bewildered, and have no right, as we think, to continue their headway as if he was not there. If they are bound to ring their bell and sound their whistle, as they certainly are, they may be bound for the same reasons to go further and check their speed a little, or stop entirely." The judge concludes that the carrying out of the spirit of the Golden Rule, in this class of cases, is as good law as it is sound morality ; and that the kindred

maxim, *sic utere tuo ut alienum non laedas*, is but another expression of that rule, and should govern the defendants' conduct in this instance, even if there be a possible remote neglect on the part of the plaintiff. And see *Company* v. *Vanderbilt*, 16 Conn. 421 ; *Johnson* v. *Patterson*, 14 Conn. 1 ; *Birge* v. *Gardiner*, 19 Conn. 507 ; *Daley* v. *Railroad Company*, 26 Conn. 591 ; *Beers* v. *Housatonic R. Co.*, 19 Conn. 566.

So, in Vermont, it is held that if the negligence of the defendant is proximate and that of the plaintiff remote, the plaintiff may recover for the injury ; and that, " if the plaintiff were guilty of negligence, or even of positive wrong, * * * the corporation are yet bound to the exercise of reasonable care and diligence in the use of their road and management of the engine and train, and if for the want of that care the injury arose, they are liable." *Trow* v. *Railroad Company*, 24 Vt. 487 ; *Robinson* v. *Cone*, 22 Vt. 213.

In Ohio, the same doctrine is held. *Kerwhaker* v. *C. C. & C. Railroad Co.*, 3 Ohio St. 172, before cited ;—see, also, *Railroad Co.* v. *Elliott*, 4 Ohio St. 475. And in Indiana, *Wright* v. *Brown*, 4 Ind. 95, *Railroad Co.* v. *Caldwell*, 9 Ind. 397, and *Railroad Co.* v. *Adams*, 26 Ind. 76. And in Illinois, *Railroad Co.* v. *Still*, 19 Ill. 499. And in Kentucky, *Railroad Co.* v. *Collins*, 2 Duvall 114. And in Missouri, *Morrissey* v. *Wiggins Ferry Co.*, 43 Mo. 380 ; *Brown* v. *Railroad Co.*, 50 Mo. 461, where it is held, WAGNER, J., delivering the opinion, that railroad companies are under the same obligations with other persons to use their own property so as not to hurt or injure others ; and though a person be injured while unlawfully on their track, or contribute to the injury by his own carelessness or negligence, yet, if the injury might have been avoided by the use of ordinary care and caution by the railroad company, they are liable for damages for the injury.

So, in Alabama, *Foster* v. *Holly*, 38 Ala. (N. S.) 76 ; and, also, in Maryland, *Railroad Co.* v. *The State*, 36 Md. 366, where it is held, BOWIE, J., delivering the opinion, that, " where a person walking on a railroad track is run over and killed by an engine belonging to the railroad company, the company is responsible in damages for such killing, though the deceased was guilty of a want of ordinary care and prudence in so walking on the track, provided it appear that the accident would not have occurred if the agents of the railroad company had used, in running the engine which occasioned the killing, ordinary prudence and care in giving reasonable and usual signals of its approach, and in keeping a reasonable lookout." And in that case the negligence of the plaintiff was held to be the remote cause, while that of the defendant was the proximate and immediate cause of the injury. 1 Redf. on Railways (5th ed.) 571, 572.

We think that these doctrines are reasonable and just, and that they ought to be applied in cases like the present. The instructions in this case were in accordance with the principles of these decisions, and we hold that they were right. The intestate had a right to be in the highway at the crossing : he had the same right to pass there that the

railroad train had. He may have been negligent, so that, if he had been injured by a defect in the highway merely, he could not have recovered; but still, if the agents of the defendants saw him thus on the track and knew his situation, or by the use of ordinary care might have known it, they had no right to run upon him and kill him, when, by the use of ordinary care on their part, they might have prevented or avoided it.

And though in general there can be no recovery against towns for injuries received from defects in highways, where the plaintiff's negligence contributed to the injury, yet, when the injury is occasioned by the negligent acts of a voluntary agent, present and acting at the time, it would be otherwise; and where both parties are present and act as voluntary agents, as in this case, the question of proximate and remote cause may properly be considered, as both parties are held responsible for the use of ordinary care; and the defendants' negligence may be so great in his direct acts towards the plaintiff that he may be liable for the same, though the plaintiff's fault may have contributed remotely to the injury. Shear. & Redf. on Neg., secs. 31, 36, 412, and *seq.* The first two instructions are sustained.

The third instruction is not seriously objected to, as we understand it, and is clearly correct under the provisions of the statute upon which this proceeding is founded. The fourth instruction is also correct, for, although of late the distinction between the degrees of negligence has been attempted to be obliterated, and the existence of any such distinction has been denied, and gross negligence has been held to be the same thing as negligence, with the addition of a vituperative epithet— *Perkins* v. *Central Railroad Co.*, 24 N. Y. 196, 206; *Wells* v. *Central Railroad Co.*, 24 N. Y. 181; *Smith* v. *Central Railroad Co.*, 24 N. Y. 222, 241; *New World* v. *King*, 16 How. 474; *Wilson* v. *Brett*, 11 Mees. & Wels. 113—yet we have no particular objection to the distinctions made by the civil law as well as the common law; and so long as different degrees of care are required in different positions, we see no objection to giving names to them, and also to their corresponding degrees of negligence. Slight negligence is the want of great care and diligence; ordinary negligence is the want of ordinary care; and gross negligence is the want of even slight care. 2 Kent's Com. 560, and *seq.*; Angell on Carriers 10, 11; Story on Bail., secs. 17, 18; Shear. & Redf. on Neg., secs. 16, 17, 18. But the distinction is, after all, mainly verbal.

We think the fifth instruction was proper. In determining what is ordinary care as well as what is gross negligence, the time, the place, the positions and duties of the parties, the kind of business in which they are engaged, and all the circumstances of each particular case, are to be considered by the jury. Shear. & Redf. on Neg., secs. 7, 22, 23, 24, 30. " But what is due or ordinary care must depend upon the circumstances of each case. Thus, what would be ordinary care at the crossing of a highway, may be gross negligence at that of a railroad; and upon this question the jury are to judge." 1 Hill. on Torts 142; 1 Redf. on Railways 567.

The motion to set aside the verdict as against the evidence, or as unsupported by the evidence, must be overruled. The train was due at the crossing fifteen minutes before nine o'clock, which fact was probably known to the deceased. He started from his house at about nine o'clock, harnessed his horses, and went upon the walk half a mile to the crossing, which, in all, might take him from 15 to 30 minutes; and when he arrived at the crossing, instead of its being half past nine, as he might have supposed, it seems it was only a few minutes past the regular car time. His clock was evidently some half an hour to an hour too fast. So far as appears, it was left for the jury to find whether or not he knew this fact, or, if he did not, whether he was in any fault for not knowing it. Under these circumstances it was clearly for the jury to say whether, in attempting to cross the track at this public crossing, under the circumstances, he was guilty of negligence, or was in the exercise of ordinary care.

And even if the jury found that he was not in the exercise of ordinary care, yet they may have found that the agents of the road, who were running the train, could easily have seen him upon the track long before they reached the crossing, and that they did see him, or in the exercise of ordinary care ought to have seen him, and that, notwithstanding, they were so grossly negligent that they failed to sound the whistle or ring the bell, but rushed on at full speed, when it may have been their duty not only to have sounded the whistle and rung the bell, but even to have slackened their speed or to have stopped altogether before coming to the crossing; and if the jury so found, and that this reckless conduct of the agents of the road was the proximate cause of the death, as it would seem clearly to be under such circumstances, the defendants would be liable, even though the deceased were in fault, if that fault only remotely contributed to the accident. It thus appears that there was competent evidence to be submitted to the jury upon all the points specified in the motion, except as to the unfitness of the servants or agents of the company, which claim had been abandoned on the trial.

The motion in arrest of judgment for alleged insufficiency of the indictment is next to be considered:

1. That it is not alleged in the bill that the deceased was in the exercise of due and reasonable care at the time of the accident. If this were in substance what it is in form, a criminal proceeding, it would ordinarily be a sufficient answer to this objection to say that the statute has no such requirement, and that this indictment charges the offence in the words of the statute. But as this is to be considered and treated as a civil action, then it follows that no such allegation is necessary, for it is well settled, in this State, that no such allegation is necessary in a civil proceeding. In *Smith* v. *The Eastern Railroad*, 35 N. H. 356, it was held that, in case for an injury resulting from the alleged negligence of the defendants, it is not necessary to allege that the plaintiff was without fault; and in *Corey* v. *Bath*, 35 N. H. 530, 548, it was held that the declaration need not allege that the plaintiff

was in the exercise of due care.  *May* v. *Princeton*, 11 Met. 442, 444.

2. The second ground of the motion is that the indictment is double, because it is charged therein that the life of said Woodbury was lost (1) by the negligence and carelessness of the defendants; (2) by the unfitness of the servants and agents of the defendants; (3) by the carelessness of the servants and agents aforesaid, and because these charges are joined in the same counts in the bill.  This position is not well taken.  Duplicity consists in the charging of two separate and distinct offences, with distinct punishments attached to each.  *State* v. *Nelson*, 8 N. H. 163 ; *State* v. *Fowler*, 28 N. H. 184 ; 1 Wharton's Am. Cr. Law (6th ed.) 382 ; *State* v. *Snyder*, 50 N. H. 150.  But there is no such joining of distinct and different offences in this case.  There is but one offence provided for in the same section of the same act.  This corporation may be guilty of this one offence in different ways,—by their own negligence or carelessness, by the unfitness of their servants or agents, or by the gross negligence or carelessness of their servants or agents ; but in whichsoever way it may be committed, it is the same offence.

This precise case is stated and illustrated in 2 Whart. Am. Cr. Law (6th ed.), sec. 1466, as follows : "A crime, which may be committed by the agency of several means, is well described if charged to be by the agency of all.  Thus, an indictment which charges the prisoner with falsely making, forging, and counterfeiting ; of causing and procuring to be falsely made, forged, and counterfeited ; and of willingly acting and assisting in the said false making, forging, and counterfeiting, is a good indictment, though all these charges are contained in a single count; if the words of the statute are strictly pursued ; and if there is a general verdict of guilty, judgment ought not to be arrested on the ground that the offences are distinct.  So, also, the description of a bank note as false, forged, and counterfeited, is not repugnant.  But where two distinct offences, requiring different punishments, are alleged in the same count, * * * and the defendant is convicted, the judgment will be arrested."  Here the one offence, created by this statute, may be committed ;" by the agency of several means," and may be properly charged to be by "the agency of all ;" and that is precisely what is done in this indictment.

3. The next ground stated is, that the first count in said indictment is defective ; and we think this position is well taken. · Upon a careful examination of this count, it will be seen that it was probably intended to charge the offence as committed by the negligence and carelessness of the proprietors of the road, and this idea is carried out sufficiently, perhaps, through the count, until near its close, where we find this as the closing sentence of the count,—"And so the jurors aforesaid * * * do say that the life of the said Benjamin Woodbury * * * was lost as aforesaid, by reason of the negligence and carelessness of their servants aforesaid."  We think the count would have been well enough had it charged that the death was caused by the negligence and care-

lessness of the defendants as proprietors of the road, at the close as it did at the commencement of the count; but when it closes by charging the death as being caused by the negligence and carelessness of the servants, that is not enough, because it is not what the statute requires. But when there is one good count in an indictment and others bad, and there is a general verdict, judgment will not be arrested. 1 Chitty's Crim. Law 249 ; 3 Whart. Am. Crim. Law (6th ed.), sec. 3047. And although this is in substance a civil proceeding, yet in form it must be criminal, the statute providing that the proceeding shall be by indictment; and we think that the form of the indictment, as well as of the verdict, must be governed by the rules applicable to indictments in other cases, the rules of criminal law.

But were this otherwise, and were the form of this indictment to be governed by the rules applicable to declarations in civil causes, we think it would make no difference. For, though the general rule may be that, in a civil suit where there are several counts, on each of which damages are claimed, with a general verdict for the plaintiff, if one count is bad the judgment must be arrested on motion, because the court have no means of apportioning the damages; yet where in a civil suit there are several counts, but all describing one and the same cause of action, but each setting it forth in a different way, and where damages are sought to be recovered only on some one count, and these facts appear in the case, and all the evidence was applicable to the good count, then, though all the other counts be bad, and there is a general verdict, judgment will not be arrested;—*Glines* v. *Smith,* 48 N. H. 259, 270, 271, where this matter is fully considered. Here, there is but one charge, but one claim, and that clearly appears in the indictment. That one charge or claim is set forth in three separate counts; and the general verdict finds the defendants guilty upon all the counts. If the proof shows them guilty upon all, and any one of them is good, that is enough. The objection that this count is double has been sufficiently answered in considering the second ground of the motion in arrest.

4. The same may be said of the charge that the second and third counts are double, under the fourth ground of the motion in arrest. The next charge under that head is, that said second and third counts charge that the life was lost by the carelessness of said servants, and not by their gross carelessness. The provision of the statute is, that the life be lost (1) " by reason of the negligence or carelessness of the proprietors ; (2) by the unfitness, or (3) by the gross negligence or (4) carelessness of its servants or agents." The second and third counts, as will be seen upon examination, do charge that said Woodbury lost his life (1) " by reason of the negligence and carelessness of the proprietors * * * and (2) by the unfitness and (3) gross negligence, and (4) by the carelessness of its servants and agents."

The defendants claim that the statute must be construed to mean "by the gross negligence, or the gross carelessness " of its servants, &c., and that to charge that the life was lost by the carelessness of these servants is not sufficient; and if the statute is to be understood as the

defendants claim, then the indictment does not charge in that particular the offence intended by the statute.    Taking the statute as it stands, without looking further, we should be disposed to give it the construction which the defendants claim, and to hold that the indictment, in that respect, was insufficient.    But we have had the curiosity to look at the history of this statute in this State, and find that our first statute on this subject was passed in 1850 (ch. 953, sec. 7), and was in substance like our present law, but the wording was a little different, as follows: If any life shall be lost, &c., " by the negligence or carelessness of the proprietor or proprietors * * * or by the unfitness or gross negligence, or by the carelessness of their servants or agents."

In the Compiled Statutes, ch. 150, sec. 66, the same language precisely, and the same punctuation (putting the comma after the word " negligence "), are used, as follows,—" by the unfitness or gross negligence, or by the carelessness of their servants," &c.; and, by the report of the commissioners to revise our statutes, it appears that they did not intend to make any change in the sense or the construction of this statute, but that all the alteration they intended was merely verbal.    See Commissioners' Report, ch. 265, sec. 15.

We may see, perhaps, what construction was given to the law of 1850, by looking at *State* v. *Gilmore*, 24 N. H. 461, which was the first indictment, so far as we know, which was found under the new law.    This indictment, in the first count, alleges that, on December 3, 1850, " the servants of the proprietors of the railroad *carelessly* drove their engine and cars against the wagon and person of one William Coult, and *carelessly* gave him one mortal wound, of which he died. And so the said Coult, by the *carelessness* of the said * * * servants of said defendants, lost his life."    The second count alleges that Coult lost his life by the negligence of the proprietors.    In the arguments, Bellows, Fowler, and Minot, for the defendants, claimed, among other things, that the term *gross*, in the statute, applied as well to carelessness as to negligence, upon the ground that, the two terms being similar in their general import, it could not be supposed that it was intended to qualify the one and not the other,—admitting that the grammatical construction of the language was opposed to their view, but claiming that the court should not be embarrassed by that circumstance, but should look at the general policy of the law, and construe the language accordingly; while Clark, for the plaintiff, claimed that, as the words of the statute are " by the gross negligence, or by the carelessness," not the gross carelessness, it could not be necessary to allege that the carelessness was gross.

PERLEY, J., in delivering the opinion, says,—" There are particular grounds of objection to the case of the government, on which we should be obliged to decide for the defendants without determining the main question raised on the construction of the statute."    He then states that the case does not show that G. & F. were the agents or servants of the defendants; also, that the indictment does not show that Coult left widow, child, or other relative to take the fine under

the statute; that these defects would be fatal; but the main question was on the construction of the statute, &c. No allusion is made in the opinion to this particular subject. If the indictment had been deemed to be insufficient in this respect, would it not have been mentioned as another reason why the decision must be for the defendants?

This indictment is in the precise words of the law of 1850 and of the Compiled Statutes, and we think must be held sufficient under that statute; and as we find there was no intention to change the meaning of the law in the revision, and as the reading of the present statute may well enough bear the same construction, we think it should be so construed,—and that this ground of objection to the indictment must fail, whether or not we may be able to find the true reason why the legislature of 1850 made a distinction between negligence and carelessness in a servant of the railroad; but that they did make the distinction is too plain for argument. Language could not make it plainer. The unfitness of the servants of the road, or their gross negligence, or their carelessness, constitute three distinct and separate means by which the death might be caused, and either would alike make the company liable.

This may not be entirely without reason, when we consider the derivation of the word careless, and its original meaning. Composed of the word care, and the termination *less*, which, according to Webster, is a privative word, denoting destitution; as wit*less*, destitute of wit; child*less*, without children; father*less*, spot*less*, faith*less*, penni*less*, sin*less*. Care*less*, destitute of care, having no care, not even the slightest degree, which would be equivalent to the grossest negligence; and if carelessness means "the quality or state of being without care" (Webster's Dict.), then our legislators were not very wide of the mark in making gross negligence and carelessness synonymous. Indeed, if ROLFE, B., in *Wilson* v. *Brett*, 11 Mees. & Wels. 113, before cited, had been speaking of carelessness instead of negligence, perhaps he might well have said that gross carelessness was the same thing as carelessness, with the addition of a vituperative epithet. *Grill* v. *Collier Co.*, L. R. 1 C. P. 600, 612. In this case the distinction is mainly, if not purely, verbal.

But the court assumed in this case that the statute required, and also that the indictment charged, both gross negligence and gross carelessness upon the servants of the road, and, under the instructions, the jury must have found both, so that the defendants have no cause to complain that the instructions were not favorable enough upon that side; and as we hold the indictment sufficient under the statute, the defendants cannot except that the ruling of the court was too favorable, if such was the fact.

It is also objected that these counts charge that the life was lost by the combined negligence and carelessness of the corporation, unfitness of its servants, gross negligence of its servants, and carelessness of its servants, which is not the offence made indictable by statute. But we can see no grounds for this position. If here was one act of negli-

gence on the part of the proprietors, and one act of gross negligence by one servant, and another act of carelessness by another servant, and the life was lost by reason of these three acts combined, why should not the company be held responsible just as much as though the death had been caused by either of these acts alone ?  But we are not without authority upon this point.  Various means used in committing the offence may be properly stated and charged in the indictment, and in the same count, without duplicity.  1 Whart. Am. Cr. Law, sec. 393.

So an indictment that charges one of the defendants with using instruments, and the same defendant, with others, with administering drugs, to produce a miscarriage, and that by both of said means together the woman died, is good, and the offence will be made out by proof that both of these means together caused the death, or that either of them alone produced it, either is sufficient to warrant a conviction.  *Com.* v. *Brown*, 14 Gray 419, 429, 431.

Upon the fifth, sixth, and seventh grounds stated as reasons for the motion in arrest of judgment, it is only necessary to add to what has already been said, that, in an indictment under a similar statute in Massachusetts, it has been held that it was not necessary to state the nature of the acts, or the manner of such negligence.  *Com.* v. *B. & W. Railroad Corp.*, 11 Cush. 512.  The same has been substantially held in this State in *Corey* v. *Bath*, 35 N. H. 530, 541, 542, 547, and in *Perkins* v. *Railroad*, 44 N. H. 225.

The eighth ground of objection stated as the foundation of this motion is, that it does not appear by the verdict that the deceased left any widow, child, or heirs.  The indictment sufficiently alleges these facts, and after verdict it will be presumed that the necessary proof was furnished.  No exception is taken that proper instructions were not given to the jury upon that subject ; and with proper instructions a verdict could not have been returned for the State without such evidence.

In overruling the exceptions in this case, and in denying the motion to set aside the verdict as against evidence or as unsupported by evidence, and the motion in arrest of judgment, upon the several grounds stated, we are not unmindful of the numerous decisions in New York and in many other States, several of which are cited in argument by the defendants' counsel, where some test has been adopted and held to be conclusive, as matter of law, that the plaintiff is guilty of contributory negligence, and if so, that he cannot recover, however remote that negligence may have been, and however negligent, careless, or reckless the agents of the road may have been.

But we doubt the propriety, the justice, and the legality of adopting such tests.  We think, in all cases where there is any conflict in the testimony, and, ordinarily, even where there is not, that all the facts and circumstances of the case should be submitted to the jury with proper instructions as to what constitutes ordinary negligence or the want of ordinary care, and what constitutes gross negligence, &c. ; and with instructions that an act or an omission which under some circumstances would not be evidence of any degree of negligence, might,

under others, be evidence of the want of ordinary care, and under still
different circumstances might be evidence of gross negligence; that
ordinary care is not only such care as people in general would exercise,
but such as they would exercise under the circumstances of each par-
ticular case; and hence the injustice of assuming a test which is made
to apply to all possible persons, in all possible places, at all possible
times, and under all possible circumstances. When we can hold, as
matter of law, that it is the duty of the blind to see, and of the deaf to
hear, and of the dumb to speak, then, and not till then, as it seems to
me, can there be a proper application of some of the tests which are
attempted to be applied in some of the cases as absolutely certain, con-
clusive, and incontrovertible tests of contributory negligence.

But, suppose that persons are negligent, and that it were proper and
right to hold, as matter of law, in a given case, that a person were
grossly negligent, yet, if that negligence is not the proximate cause of
his injury, shall that excuse the officers and agents of the railroad for
the neglect of all care and all caution, and justify them in carelessly
and recklessly driving on their engines of death at full speed, without
any check or abatement, and without giving any warning or any no-
tice at crossings and places where they have every reason to apprehend
accident and danger, and thus sacrifice human life negligently, need-
lessly, wantonly, without fear and without responsibility? Such can-
not be the law.                                           *Judgment on the verdict.*